Argued and submitted February 15,
reversed and remanded for trial May 5, 1980

# STATE OF OREGON,
### *Respondent,*
#### *v.*
# JOHN GREGORY WAGNER,
### *Appellant.*

## (No. 22501, CA 15475)

610 P2d 301

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief were Gary D. Babcock, Public Defender, and Steve Dixon, Certified Law Student, Salem.

Christian W. Van Dyke, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Defendant appeals his conviction for criminal activity in drugs for possession of heroin. He assigns as error the denial of his motion to suppress evidence seized by police in the course of a warrantless search.

In November, 1976, officer David Meier of the Bend Police Department learned of drug activity at 555 NW Federal Street, in Bend, from an informant. Meier checked with the Corrections Division and learned that Nancy Dowling lived at that address and that she was a probationer who had, in Meier's terms, "waived her Fourth Amendment rights."

A condition of Ms. Dowling's probation was that "the defendant's person, vehicle and residence shall be subject to search at any time by her probation officer or any police officer." Meier informed Ms. Dowling's probation officer, Donald Frederickson, that he had been informed of drug activity at Ms. Dowling's residence. Frederickson consulted with his supervisor and they decided a search would be appropriate. He then rendezvoused with Meier and five or six other police officers and deputies of the Deschutes County Sheriff's office at the residence. Frederickson knocked and entered after hearing a male voice respond, "Come on in." The police followed. It is not clear how soon after Frederickson's entry the police entered, but Frederickson had at least enough time to identify himself, ask if Ms. Dowling was at home, and to hear that she was not.

Defendant was in the living room, along with Ms. Dowling's young daughter and four visitors, a man and woman and their infant, and another man. Meier advised the defendant and the visitors of their constitutional rights and told them why he, Frederickson and the other police officers were there. Meier asked for, and received, consent to search their persons, as a result of which "track" marks were observed on defendant's arm. Defendant admitted to having used

heroin but told Meier he had not used any for the past two weeks.

Frederickson and at least one police officer made a quick spot check of the house to determine whether or not Ms. Dowling was present. As a result of that spot-check items were observed in plain view: a blood spotted bandanna on the floor of the living room; a roach clip containing vegetable matter hanging on the living room wall; blood-spotted tissues in the bathroom wastebasket; spoons with blackened bottoms atop a dresser in a bedroom later found to be occupied by Ms. Dowling or her daughter; a yellow balloon on the kitchen drainboard, and a number of marijuana pipes found throughout the house. On the basis of that evidence the police arrested defendant.

After the arrests and the removal of all of the persons then in the house Officer Meier directed a thorough search of the house. As a result of that search, materials pertaining to drug use in addition to those already mentioned were found throughout the house. In what was identified at trial as the bedroom known by Meier at the time of the search to be that of defendant, the police found and seized a number of items associated with drug use. In a box under defendant's pillow was found a measuring spoon, mirror, two razor blades and short sticks with cotton on the ends. Laboratory analysis revealed traces of heroin on the spoon and mirror. Another box contained two syringes with needles, and still another, a syringe. Three needles, eight sticks with cotton at the tips, part of what appeared to be a balloon, two vials and some pieces of paper were also seized. Heroin was found in one of the papers which had been folded into a bindle.

The state relies solely on the condition of Ms. Dowling's probation as legal justification for the entry and search. The terms of that condition — that her person, vehicle and residence shall be subject to search at any time by her probation officer or any police officer — are too broad because it authorizes a search by police

[12]

officers acting alone. *State v. Fisher,* 32 Or App 465, 574 P2d 354 (1978). Notwithstanding the invalid condition, we have held that a probationer waives any objection to a condition of probation unless it is challenged on appeal. *State v. Hovater,* 37 Or App 557, 588 P2d 56 (1978). Ms. Dowling had not challenged that condition.

The trial court held that defendant did not have standing to question the warrantless search under the condition of probation. On appeal the state concedes defendant has standing to claim a violation by governmental intrusion, but contends, in effect, that defendant is bound vicariously to the probationer's waiver. It follows, the state's argument goes, that because the search was authorized by the probation condition it was valid.

Whether that conclusion follows depends upon what it was that the probationer waived. The state apparently considers the condition as a self-executing advance consent by the probationer to a general warrantless search. We do not construe the condition so broadly; rather, it is an agreement by the probationer to consent to a warrantless search if so requested by her probation officer (or, in the overbroad language, by the police); if she refuses, her probation may be revoked. We have held that restrictions on a probationer's civil liberties, including Fourth Amendment rights, are valid if they bear a reasonable relationship to the treatment of the offender and the protection of the public. In *State v. Culbertson,* 29 Or App 363, 372, 563 P2d 1224 (1977), we said:

> "It is reasonable to expect that a court may, for the probationary purposes of prevention of recidivism and of supervision for public safety, require as a specific condition of probation that a probationer consent to warrantless searches by his probation officer, *United States v. Consuelo-Gonzales,* 521 F2d 259, 262 (9th Cir 1975), or to waive his right to refrain from self-incrimination, *cf. State v. Wilson,* 17 Or App 375, 521 P2d 1317, *rev den* (1974), *cert den*

[13]

420 US 910 (1975). Similarly, a probation officer's demand to search made in reasonable pursuance of probationary objectives under ORS 137.630(4) must be obeyed at the hazard of revocation. * * *"

In *State v. Hovater, supra,* we upheld the revocation of probation because the probationer refused to submit to a polygraph test where she had agreed, as a condition of probation, to submit to one upon request.

Here, no request was made of the probationer and no effort was made to obtain her consent; she was not at home. The probation officer had the right to go to her home, to enter the living room when invited in, to look through the house to determine if she was there and, in the process, to seize evidence of crime in plain view.

The evidence so viewed was sufficient cause for the police to arrest defendant, which they did, and also gave the police probable cause to make a thorough search of the house. But once all of the persons who had been in the house were removed after the arrests were made, there were no exigent circumstances justifying the intensive search of the entire premises without a warrant. At that point, the situation was the same as that involved in *Mincey v. Arizona,* 437 US 385, 98 S Ct 2408, 57 L Ed 2d 290 (1978). In that case an undercover officer had gone to defendant's apartment to purchase heroin by pre-arrangement, and then left ostensibly to obtain money. When he returned, acompanied by other plainclothes policemen, he was shot after he re-entered the apartment. Shortly thereafter, homicide detectives arrived at the scene and, after removing the officer and all of the suspects from the apartment, proceeded to make an intensive search.

The Supreme Court reversed the Arizona Supreme Court's affirmance of the denial of defendant's motion to suppress, holding that there were no exigent circumstances once all of the suspects were removed from the apartment. The court states:

[14]

"* * * There was no indication that evidence would be lost, destroyed, or removed during the time required to obtain a search warrant. Indeed, the police guard at the apartment minimized that possibility. And there is no suggestion that a search warrant could not easily and conveniently have been obtained. We decline to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search." 437 US at 394.

Here, there were several police officers in addition to the probation officer at the scene of the crime. Once the defendants and other persons were removed from the premises, there is nothing in the record to indicate that evidence would be lost pending the issuance of a warrant.

Accordingly, evidence seized as a result of the more intensive search following defendant's arrest was inadmissible and should have been suppressed. We cannot say that the admission of the evidence unlawfully seized was harmless beyond a reasonable doubt, *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705, 24 ALR3d 1065 (1967), and therefore reverse.

Reversed and remanded for trial.