Argued and submitted December 13, 1993, affirmed March 22, petition for review denied August 1, 1995 (321 Or 429)

## STATE OF OREGON,
*Respondent,*

*v.*

## RANDALL STEVEN DAVIS,
*Appellant.*

(920633419; CA A77399)

891 P2d 1373

Susan Russell, Metropolitan Public Defender, argued the cause and filed the brief for appellant.

Diane S. Lefkow, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Defendant appeals his conviction, on stipulated facts, for delivery of a controlled substance, marijuana. ORS 475.992. He assigns error to the trial court's denial of his pretrial motion to suppress evidence seized during a search of his apartment.[1] We affirm.

The relevant historical facts, as found by the trial court, are supported by the evidence and, therefore, are binding on appeal. *See State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). At the time of his arrest, defendant was on federal probation for mail fraud. Among the conditions of his probation, defendant was required to submit to unannounced home visits by his probation officer and to "submit * * * to reasonable search and seizure by the Probation Officer without a warrant." Defendant was also required to refrain from committing a federal, state or local crime and was not to possess controlled substances.

On June 14, 1992, Hill, defendant's federal probation officer, made an unannounced home visit. Defendant allowed Hill into the apartment. Hill immediately smelled a strong odor, which he identified as marijuana smoke, and saw a fresh bud of marijuana on the coffee table. When Hill asked whose bud it was, defendant denied that it was his. Hill then asked defendant what was going on and said, "Why don't you give me a tour of your apartment."[2] Defendant replied, "You got me," and led Hill directly into his bedroom, where Hill saw a grow light and several marijuana plants inside an open closet. Defendant told Hill that the plants were not his.

After viewing the grow operation, Hill told defendant to stay on the premises and not do anything with the plants, and that they would see each other in Hill's office the next morning. Hill then left the apartment because, as he testified, he became concerned for his safety, as he always does when working alone in a house where there are drugs. From his car, Hill immediately called his supervisor and the Portland Police Department. Officer White responded to the radio call

---

[1] Defendant's other assignment of error does not merit discussion.

[2] Hill testified that, although he previously had been to defendant's apartment, he had never seen more than the living room and kitchen area.

and arrived approximately 30 minutes later. Hill told White that, during an unannounced home visit, he had discovered a small grow operation in defendant's closet and that he wanted White to accompany him to the apartment. The two officers then returned to defendant's apartment, where they knocked on the door, spoke to defendant and were allowed to enter.

Once inside, White explained that he was there at Hill's request to remove the marijuana grow operation. White then followed Hill down the hallway to defendant's bedroom. Defendant, who remained in the living room, was cooperative and did not object to or prevent the officers from going to the bedroom. After viewing the marijuana, both officers returned to the living room, and White read defendant his *Miranda* rights. Defendant made additional statements to White, which caused White to request permission to conduct a thorough search of defendant's bedroom. Defendant refused consent, and no other searches were conducted. However, White did return to the bedroom to dismantle and seize the grow operation.[3]

Defendant was charged by indictment with manufacture of a controlled substance. ORS 475.992. In a pretrial motion, defendant sought to suppress all evidence obtained from the apartment on the ground that the searches were unlawful. The trial court denied the motion, and defendant was convicted on stipulated facts of delivery of a controlled substance.[4]

On appeal, defendant first argues that Hill's initial search of the apartment was unlawful because it was not authorized by the search condition of defendant's probation. Defendant contends that the condition allows a probation officer to request a search only if the officer reasonably believes that a search would reveal evidence of a probation violation and that, here, the request was not reasonably related to a suspected probation violation. The trial court, however, found that Hill's inquiry was unrelated to his

---

[3] Defendant does not contend that White's second visit into the bedroom constituted a separate search.

[4] We note that the indictment accused defendant of manufacture of a controlled substance. ORS 475.992. The parties do not discuss this discrepancy, nor do we.

authority to conduct a search under the search condition. Rather, the court found that Hill asked for a "tour" as part of the home visit condition, and that defendant consented to that home visit by taking Hill into the bedroom.[5] Based on the court's findings, which defendant does not challenge, it is unnecessary to decide whether, at that time, Hill could have requested that defendant submit to a search under the terms of the search condition.

Defendant next argues that there was no authority for the subsequent warrantless search by Hill, accompanied by White, and, therefore, all evidence obtained as a result of that search should have been suppressed. The state first contends that the lab report, establishing that the plants were marijuana, was the only evidence offered from the second search, and that any error in admitting that report was harmless. According to the state:

> "Officer Hill's observations of the plants and identification of them as marijuana, along with defendant's admissions, all of which are among the facts to which defendant stipulated and are not challenged here, are sufficient to support defendant's conviction. Given the stipulated facts, [admission of] the lab report was not necessary and, at worst, harmless to defendant's case."

---

[5] After questioning Hill directly about the sequence of events and Hill's exact statements to defendant, the trial court stated:

"I find the probation officer to be a credible witness. I accept his version of the facts, especially as outlined in my statements to him and his answers to me which covered the crucial questions.

"I find that under both state and federal law, the probation officer has a right to ask for a home visit * * *.

"[N]ow we come to that first interesting issue, the conversation about 'why don't you give me a tour,' 'you got me,' [defendant] was nervous, got up and went in the bedroom. I accepted the probation officer's version of the events in question. I find that the probation officer did have consent to search."

Later, in response to the prosecutor's argument that Hill asked only for a tour and did not conduct a search, the court clarified its earlier comments:

"THE COURT: I've already said that there's, that's, *that is not a search, okay. He's simply conducting a home visit.* He asked for a tour, he can ask for a tour. The defendant has a right to refuse it and then the probation officer has a right if it's appropriate, to call the marshals and throw him in jail for a probation violation. Okay.

"* * * * *

"THE COURT: That's, that's the way it works. But he didn't refuse it. He gave him a home visit and in fact he made incriminatory [*sic*] statements. Okay." (Emphasis supplied.)

We do not agree with the state's description of the evidence that would have been suppressed had the trial court found the search unlawful. Defendant sought to suppress "all evidence *of any kind*" (emphasis supplied), including that obtained during Hill's second entry. Accordingly, the statements that defendant made after the search, characterized by the state as "implicit admissions," were subject to suppression. The state's argument, then, reduces to the proposition that the evidence obtained during Hill's first visit to the apartment was sufficient to support a conviction.

■■ Under the harmless error rule, a criminal conviction must be affirmed, despite error, whenever there is "substantial and convincing evidence of guilt" and "little, if any, likelihood that the error affected the verdict." *State v. Parker*, 317 Or 225, 233, 855 P2d 636 (1993). We are not persuaded that the evidence obtained during the home visit constitutes substantial and convincing proof that defendant committed the crime for which he was convicted. Thus, we do not believe that the admission of the subsequently obtained evidence was harmless to defendant's case.

The state next contends that the search was lawful, because defendant consented to a search, as he was required to do under the terms of his probation. The trial court found that

"[defendant] did not consent, he did not refuse consent. They just came in, told him what they were going to do, and he didn't do anything.

"* * * * *

"[W]hat we've got here clearly is the defendant, in the light most favorable to the State, as far as I'm concerned, acquiescing to the authority of the probation officer. Okay. We've got acquiescence."[6]

The court emphasized that, even though it was not deciding the issue of whether defendant's probation should be revoked, it "would not have found what [defendant] did to be a refusal" in terms of a violation of the conditions of his probation.

---

[6] Defendant does not argue that he objected to the search, nor does he challenge the trial court's finding that he acquiesced in the search.

Initially, the court concluded that, in the light of the probation condition requiring defendant to submit to reasonable searches, his acquiescence was sufficient to authorize Hill's search. Although it recognized that an ordinary citizen's mere acquiescence to the showing of police authority does not constitute voluntary consent to search, the court assumed that a different standard applies when a probationer, who is required to submit to searches, acquiesces to his or her probation officer. However, the court was unable to find any case law to support its theory:

"I'm now beginning to be convinced that the rule in the state of Oregon may well be the same for probation officers and police officers. If that's the case, it's a bad rule. * * * [A]s far as I'm concerned, it's not unreasonable for a probation officer to assume that someone who's going to jail if they object [to a reasonable search] is not objecting, okay. And that a probation officer ought to be able to assume that unless someone raises an objection, given that condition of their probation, that they ought to be able to search."

Ultimately, the court concluded that because defendant did not expressly consent to the search, the probation condition could not provide authority for the search. Nonetheless, the trial court found that exigent circumstances justified the warrantless search.

The issue presented on appeal is whether defendant's failure to expressly consent to or refuse the search denied Hill the authority to conduct a search under the probation condition. Under Article I, section 9, a probation condition that requires a probationer to submit to searches does not constitute a self-executing, prospective consent by the probationer to a general warrantless search. Rather, it represents an agreement by the probationer to submit to reasonable searches by the probation officer. *See State v. Hindman*, 125 Or App 434, 866 P2d 481 (1993); *State v. Wagner*, 46 Or App 9, 610 P2d 301 (1980). If the probationer refuses to submit to such a search, then the officer has no authority, *under the terms of the search condition*, to conduct a warrantless search. The refusal may, however, violate the terms of the probation and could provide grounds for revocation of the probation.

■■   Because the search condition does not constitute a waiver of the probationer's Article I, section 9, rights, the probationer is entitled to refuse to allow the search, and must be given a reasonable opportunity to do so. This is so even if the language of the condition does not specifically require that the probationer be *asked* to submit to a search.[7] Thus, for example, where the probationer was not at home when a warrantless search of her premises was conducted, the police could not rely on the authority of her probation search condition to justify that search. *State v. Wagner, supra; see also State v. Wilcox*, 44 Or App 173, 605 P2d 721 (1980) (probationer discovered in a bathroom methamphetamine lab during the course of a purported probation search).[8]

■   The state argues that, in view of the relationship between the probationer and the probation officer and the condition requiring submission to searches, a probationer who acquiesces to a reasonable search has, as a matter of law, consented to that search. For the reasons that follow, we conclude that a probationer's acquiescence to a probation search may constitute consent, depending on the circumstances. However, we decline to adopt a *per se* rule to govern all probation searches.

■■   Defendant is correct that, generally, an ordinary citizen's "mere acquiescence" to police authority does not constitute voluntary consent to search. *State v. Little*, 249 Or 297, 302, 431 P2d 810 (1967), *cert den* 390 US 955 (1968); *see also Bumper v. North Carolina*, 391 US 543, 88 S Ct 1788, 20 L Ed 2d 797 (1968). The state, however, argues that the special nature of the probation officer/probationer relationship makes application of that standard inappropriate outside the context

---

[7] Compare *State v. Hindman, supra*, in which a condition of the defendant's probation required that he submit to searches "upon request." In that case, we held unlawful a search purportedly authorized by the condition, because the police, viewing the condition as a waiver of the defendant's right to be free from unreasonable searches and seizures, neither asked for nor received the defendant's consent before conducting the search. 125 Or App at 438-39.

[8] We note that Oregon law relating to probationary searches is relevant even where, as here, the probationer is on federal probation. Even if a condition of probation imposed by a federal court could be construed as being broader in scope than one imposed by an Oregon court, the state cannot rely on evidence in an Oregon criminal proceeding unless the evidence was "obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution." *State v. Davis*, 313 Or 246, 254, 834 P2d 1008 (1992).

of an ordinary police/citizen contact. Specifically, the state contends that, given a probation condition that requires submission to a reasonable search, and given a probationer's duty to obey such a condition, a probationer's acquiescence to a probation officer's reasonable demand to search is the equivalent of consent. We agree that the ongoing supervisory relationship between the probation officer and the probationer is unlike that of a police officer and a citizen. *See State v. Culbertson*, 29 Or App 363, 369, 563 P2d 1224 (1977). Additionally, the circumstances surrounding a probation officer's request or demand to search are different than in the police/citizen contact, where the citizen has no obligation to submit to a warrantless search. Accordingly, we believe that, under some circumstances, a probationer's acquiescence to a search by the probation officer may constitute consent.

■ It is important to emphasize, however, that the fact that a probationer has a duty under the terms of probation to submit to a reasonable search does not mean that acquiescence will always constitute consent or that the probationer cannot elect to refuse the search. As in the police/citizen context, the environment surrounding the probation search may be sufficiently coercive so as to preclude the probationer from raising an objection. If the circumstances are such that the probationer is effectively denied a reasonable opportunity to refuse the search, then the probationer's decision to submit peacefully cannot be deemed voluntary consent. *Cf. State v. Freund*, 102 Or App 647, 796 P2d 656 (1990) (five armed officers pulled into the defendant's driveway in three unmarked cars, a sergeant confronted the defendant, showed his badge and stated that he was there to pick up the marijuana plants; defendant's acquiescence to the search was not deemed voluntary consent).

■ ■ Turning to the facts of this case, we consider the totality of the circumstances to determine whether defendant's acquiescence to the officers' actions constituted consent to search. Defendant knew that he had agreed to submit to reasonable searches by Hill, upon penalty of revocation of his probation. Just thirty minutes before the search, he had *personally* shown Hill into the bedroom where the grow operation was in plain view; thus, he had allowed himself to be caught with the contraband, and he knew that a probation

search by Hill would be reasonable. Moreover, before Hill and White went into the bedroom, they spoke to defendant in the living room. Hill and White were the only officers on the premises at the time, and there is no evidence to suggest that defendant was in any way prevented, either by intimidation or by any actions of the officers, from voicing his objection to the search. Defendant had ample opportunity to refuse the search, had he, in fact, been willing to further jeopardize his probation.

Under the circumstances of this case, we do not believe that defendant "merely" acquiesced to a showing of police authority. Rather, defendant did exactly what he was required to do to remain in compliance with the terms of his probation: He submitted to a reasonable search of his premises by his probation officer. Other than the pressure on defendant not to violate the terms of his probation, there was nothing coercive about the circumstances. Accordingly, after evaluating defendant's acquiescence to the officers' actions in the light of the circumstances, we conclude that defendant's actions constituted consent to the search and seizure conducted by Hill. The trial court did not err in denying defendant's motion to suppress.

Affirmed.