**Hurist JOUBERT, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5741.

Court of Appeals of Alaska.

Oct. 11, 1996.

Daniel L. Lowery, Assistant Public Defender, and John B. Salemi, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

In 1989, Hurist Joubert was convicted of first-degree burglary and third-degree theft, and sentenced to prison. On April 5, 1994, Joubert was released on concurrent probation and parole. Two months later, Joubert's probation officer searched Joubert's house and discovered cocaine.

Joubert filed a motion to suppress the cocaine; he contended that his probation officer had acted illegally when she searched his house. The superior court denied Joubert's suppression motion and ultimately revoked his probation. Joubert now appeals the order of the superior court revoking his proba-

tion. He renews his contention that the cocaine found at his house was the fruit of an illegal search. We agree and we reverse.

On June 6, 1994, Probation Officer Kathleen Saporito received a telephone call from a man who said he had information concerning Joubert. The man reported that his daughter told him that she had attempted to buy crack cocaine from Joubert at a residence behind the Carrs grocery on Gambell Street in Anchorage. The man said that he had gone to this residence and had observed a black Chevrolet Blazer parked there. Saporito independently knew that Joubert was driving a black Blazer. Based on the information provided by this caller, Saporito contacted the Anchorage police and arranged for officers to help her conduct a search of Joubert's residence.

On June 8, five government officers went to Joubert's home to search it: Saporito, two other probation officers, and two Anchorage police officers. As the officers pulled up to Joubert's residence, a vehicle was leaving the driveway. One of the other probation officers thought that she recognized Joubert in the car, but Saporito disagreed and the car was not stopped. Saporito and two officers approached the house and knocked on the door.

Joubert's daughter, Hedjewahl Joubert, answered the door. Saporito asked Hedjewahl if Joubert was there; Hedjewahl informed her that he had just left. Saporito then identified herself as Joubert's probation officer and asked if she could "have a look around". Hedjewahl allowed Saporito and the other two officers to enter the house; when Saporito inquired which room was Joubert's, Hedjewahl directed Saporito to Joubert's room.

Shortly after Saporito entered the home, the two remaining officers knocked on the door. Saporito answered the door herself and, without seeking Hedjewahl's permission, allowed the two other officers to enter the house. Hedjewahl was directed to sit on the couch. Saporito would not allow her to leave the house, and Saporito stood next to Hedjewahl as she called to postpone a scheduled hair appointment. When the telephone rang while the officers were searching the house, Saporito told Hedjewahl not to answer it.

Although Saporito had obtained entry to the house by telling Hedjewahl that she wanted to "have a look around" (ostensibly to verify that Joubert was not present), Saporito and the other officers quickly commenced a search of the house. According to Hedjewahl's affidavit filed in support of Joubert's suppression motion, the officers began going through cupboards and drawers in the kitchen, they searched Joubert's room and other parts of the house, and, in general, they "carefully search[ed] the whole place". One of the officers began questioning Hedjewahl in front of her children concerning her knowledge of Joubert's alleged drug use and drug dealing.

In Joubert's room, the officers discovered a set of scales and a vial underneath a shirt on the bed. The scales and the vial both tested positive for trace amounts of cocaine.

During the search, Joubert telephoned the residence. Hedjewahl answered the phone and, acting on instructions from Saporito, told Joubert to return home. Officer Saporito then took the phone from Hedjewahl and ordered Joubert to return to the residence. Joubert returned to the residence ten to fifteen minutes later, and he was immediately placed under arrest.

As the legal authority for the probation officer's search of Joubert's residence, the State relies on Condition 12 of Joubert's probation:

> Upon the request of a probation officer, submit to a search of your person, personal property, residence[,] or any vehicle in which you may be found for the presence of contraband.[1]

---

**1.** Joubert's conditions of parole include a similar provision: "Upon request by or at the direction of a parole officer at any reasonable time, I will submit to a search of my person, my personal property, my residence, my vehicle[,] or any vehicle [over] which I have control, for the presence of [illegal drugs]." Although the State proceeded against Joubert for violating his probation, for these purposes the distinction between Joubert's status as a probationer and his status as a parolee is immaterial. *Roman v. State*, 570 P.2d 1235, 1237 n. 3 (Alaska 1977).

This condition of probation ostensibly imposes an obligation on the probationer to "submit to a search of [his] ... residence" "upon request of a probation officer". Because Condition 12 speaks of the probationer's duty to "submit" to a probation officer's "request" to search, Joubert argues that any search conducted under authority of this provision must be preceded by a request directed to the probationer. The State argues, however, that even though Condition 12 appears to be worded in terms of the probationer's obligation, its true intent is to confer authority on the probation officer—the authority to search the probationer's residence at will, regardless of whether the search is prefaced by a request, and regardless even of whether the probationer is aware of the search.

One might reasonably argue that the purposes of probation would be better advanced if Condition 12 were interpreted as the State suggests—to allow probation officers to conduct unrestricted, unannounced searches of a probationer's residence. However, other societal interests support Joubert's interpretation of Condition 12. As the supreme court recognized in *Roman v. State*, 570 P.2d 1235 (Alaska 1977), there is a price to be paid for adopting a rule that probationers and parolees give up all of their Fourth Amendment rights simply because they are on probation or parole:

> Fourth amendment protection will be diminished not only for parolees, but also for the family and friends with whom the parolee might be living. Those bystanders may find themselves subject to warrantless searches only because they are good enough to shelter the parolee, and they may therefore be less willing to help him— a sadly ironic result in a system designed to encourage reintegration into society.

*Roman*, 570 P.2d at 1243 (quoting Note, "Striking the Balance Between Privacy and Supervision: The Fourth Amendment and Parole and Probation Officer Searches of Parolees and Probationers", 51 N.Y.U.L.Rev. 800, 816 (1976)).

The events of Joubert's case are a concrete example of what the supreme court was worried about in *Roman*. Joubert's probation officer, backed up by police officers, entered the house when only Hedjewahl Joubert and her children were present. Probation Officer Saporito gained entrance by telling Hedjewahl that she wanted to "have a look around"; but once inside, Saporito and four other officers proceeded to search the entire house, including cupboards and drawers. Moreover, the officers essentially placed Hedjewahl and her children under arrest: Hedjewahl was told that she could not leave the house, and at one point she was instructed not to answer her ringing telephone.

■ Finally, we note that we do not have complete liberty to construe Condition 12 as we think best. In Alaska, a defendant has the choice whether to accept the sentencing court's offered conditions of probation or to refuse and serve the suspended prison term instead. *Brown v. State*, 559 P.2d 107, 111 n. 13 (Alaska 1977); *State v. Staael*, 807 P.2d 513, 516 (Alaska App.1991). Thus, to a certain extent, "the terms of probation might be likened to a contract between the court and the defendant". *McRae v. State*, 909 P.2d 1079, 1083 (Alaska App.1996). In construing Condition 12, we must therefore examine how a reasonable person in Joubert's place would have understood it, taking into consideration "the language of the disputed provision ... and the case law interpreting similar provisions". *Peterson v. Wirum*, 625 P.2d 866, 872 n. 10 (Alaska 1981) (*citing Wright v. Vickaryous*, 598 P.2d 490, 497 (Alaska 1979)).

■ As noted before, the language of Condition 12 does not, on its face, grant a probation officer the kind of open-ended authorization to search that the State argues for. Instead, Condition 12 is worded so as to impose an obligation upon Joubert—the obligation to submit to a search whenever requested by his probation officer. Thus, the language of the disputed provision appears to support Joubert's interpretation—that the probation officer's authority to search is premised on Joubert's receiving notice of the intended search. Moreover, cases from other states interpreting similar provisions also tend to support Joubert's interpretation of Condition 12.

In *State v. Hindman*, 125 Or.App. 434, 866 P.2d 481, 482 (1993), the defendant was sub-

ject to a condition of probation requiring him to "[s]ubmit to [a] [s]earch of person, vehicle, property and residence upon request of [a] probation or police officer". The Oregon court held:

> The language of [this] probation condition [specifically] requires that defendant submit to searches *upon request.* We thus conclude that defendant's probation condition was an agreement to consent to a search and not a prospective consent. If defendant was to refuse to consent to a requested search, he would be violating a condition of his probation.... [T]he record [in the present case] does not show ... that defendant's consent was either asked for or given before the police conducted the search. ... Accordingly, we hold that the search was unlawful[.]

*Hindman,* 866 P.2d at 483 (emphasis in the original).

Similarly, in *People v. Mason,* 5 Cal.3d 759, 97 Cal.Rptr. 302, 304, 488 P.2d 630, 632 (1971), *cert. denied,* 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed.2d 478 (1972), the defendant was subject to the condition that he submit to a search "whenever requested to do so". The California Supreme Court held that, under this condition of probation, the defendant was entitled to advance notice of the search. *Id.*

In *State v. Davis,* 133 Or.App. 467, 891 P.2d 1373, 1375 (1995), the defendant was subject to a condition of probation that did not mention "request"; rather, the condition required the defendant to "submit ... to reasonable search and seizure by the Probation Officer without a warrant". Nevertheless, the court held that this condition of probation:

> does not constitute a self-executing, prospective consent by the probationer to a general warrantless search. Rather, it represents an agreement by the probationer to submit to reasonable searches by the probation officer. ... If the probationer refuses to submit to such a search, then the officer has no authority, *under the terms of the search condition,* to conduct a warrantless search. This refusal may, however, violate the terms of the probation

and could provide grounds for revocation of the probation.

*Davis,* 891 P.2d at 1378 (emphasis in the original) (citations omitted).

And in *People v. Superior Court,* 12 Cal.3d 858, 117 Cal.Rptr. 433, 434, 528 P.2d 41, 42 (1974), the defendant's condition of probation required him to "submit to a search of [his] residence ... upon request by [his probation] agent". The California Supreme Court held that this condition of probation did not authorize a search of the defendant's residence in his absence and without his knowledge. *Id.* 117 Cal.Rptr. at 435, 528 P.2d at 43.

See also *State v. Wagner,* 46 Or.App. 9, 610 P.2d 301, 302–04 (1980), where the defendant was subject to the condition that "the defendant's person, vehicle, and residence shall be subject to search at any time by her probation officer or any police officer". The court held that this condition of probation did not authorize a search of the defendant's house after she had already been arrested and removed from the residence. *But see State v. Martinez,* 811 P.2d 205, 209 (Utah App.1991) (construing a similar condition of probation, the court held that to require the defendant to be present and to actively consent to the search would be inconsistent with the basic purposes of probation).

Thus, both the language of Condition 12 and the judicial interpretation given similar conditions of probation by the courts of other states lend support to Joubert's argument that Condition 12 requires the probation officer to communicate in some way with the probationer before conducting a search. The State fails to cite any case law to support its interpretation of Condition 12 (that the provision authorized Joubert's probation officer to search his residence essentially at will, with no prior notice to Joubert and without regard to whether Joubert was present).

█ We therefore conclude that Condition 12 required the probation officer to notify Joubert before searching his house. Thus, we agree with Joubert that the search conducted by the probation officer in this case was not authorized by Joubert's conditions of probation.

We do not reach the issue of whether Condition 12 means that the probation officer, after notifying Joubert of her desire to search, could conduct the search without obtaining Joubert's consent or whether, instead, Joubert simply agreed that his probation could be revoked if he refused consent. Also, because the State has not argued the point, we do not reach the issue reserved by the United States Supreme Court in *Griffin v. Wisconsin*, 483 U.S. 868, 880, 107 S.Ct. 3164, 3172, 97 L.Ed.2d 709 (1987): whether, even in the absence of a specific condition of probation, a probation officer may lawfully search a probationer's home when there are reasonable grounds to believe contraband is present.

■ The State alternatively argues that even if Joubert's conditions of probation did not authorize the search of his residence, the evidence of the cocaine found in Joubert's house should not be suppressed. The State relies on *State v. Sears*, 553 P.2d 907, 912–13 (Alaska 1976), in which the Alaska Supreme Court held that the rule excluding illegally seized evidence would normally not apply to probation revocation proceedings. However, the supreme court declared that the exclusionary rule should still apply when the contested search or seizure was "consciously directed" toward a probationer. *Id.* at 914. The supreme court reiterated this holding in *Waring v. State*, 670 P.2d 357, 361 (Alaska 1983):

> In *Elson [v. State*, 659 P.2d 1195 (Alaska 1983),]* and *Sears*, we noted that police generally conduct searches and arrests for the purpose of prosecuting and convicting an individual, not to enhance the sentence or revoke the [probation] of a defendant; therefore, the deterrent effect of excluding evidence in sentencing and probation proceedings would be minimal. *Elson*, 659 P.2d at 1203–04; *State v. Sears*, 553 P.2d at 912. In both cases, we concluded that this marginal deterrent value was outweighed by the needs of the probation and sentencing systems. *Elson*, 659 P.2d at 1202; *Sears*, 553 P.2d at 913. Nevertheless, we recognized that under some circumstances the deterrent effect of applying an exclusionary rule in probation and sentencing proceedings would be significant, *e.g.*, if the illegal searches and arrests were consciously directed toward those proceedings.

In Joubert's case, the sole apparent purpose of the search conducted by Probation Officer Saporito and the other officers was to find evidence that Joubert had violated the conditions of his probation. When traces of cocaine were found in Joubert's house, the only action taken by the government was to file a petition to revoke Joubert's probation. Thus, the search of Joubert's residence appears to have been "consciously directed" toward uncovering evidence for use in a probation revocation proceeding. Under *Sears* and *Waring*, the exclusionary rule applies.

We therefore conclude that the superior court should have granted Joubert's suppression motion. Accordingly, the judgement of the superior court revoking Joubert's probation is REVERSED.