STATE of Alaska, Petitioner,

v.

Ann JAMES and Gregory
James, Respondents.

No. A–6626.

Court of Appeals of Alaska.

Sept. 4, 1998.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Cynthia L. Strout, Anchorage, for Respondent Gregory James.

Richard D. Kibby, Anchorage, for Respondent Ann James.

Before COATS, C.J., and
MANNHEIMER and STEWART, JJ.

OPINION

MANNHEIMER, Judge.

■ In 1995, Gregory James was convicted of fourth-degree misconduct involving a controlled substance, and he was placed on probation. One of his conditions of probation stated that,

[u]pon the request of a probation officer, [James must] submit to a search of [his] person, personal property, residence[,] or any vehicle in which [he might] be found for the presence of contraband.

The question presented in this appeal is whether, under this provision, James's probation officer was authorized to conduct a warrantless search of his residence even when James refused to consent to the search. For the reasons explained here, we interpret this provision as an authorization for warrantless searches of a probationer's person and property, even when the probationer does not consent to the search.

### Facts of the case and the contentions of the parties

On April 1, 1996, Gregory James's probation officer, Rebecca Brunger, came to his house; she was accompanied by another probation officer, a police officer, a drug detection dog, and two dog handlers. When James came to the threshold to greet Brunger, she told him that she wished to conduct a "home visit"—that is, she wished to inspect James's house to make sure that James was complying with his conditions of probation. James told Brunger that he did not want her to visit his home at that time. In the meantime, however, Brunger smelled the odor of growing marijuana coming from within James's house.

James retreated into his house, and Brunger followed him. Once inside, Brunger could smell the marijuana even more strongly, and she observed a closet covered with black visqueen. She asked James if he was cultivating marijuana, and James admitted that he was. Although James repeatedly objected, Brunger and the police officer searched James's house; they found marijuana both in the visqueen-covered closet and in the basement. As a result, both Gregory James and his wife, Ann, were indicted for fourth-degree misconduct involving a controlled substance (essentially, growing marijuana for commercial purposes).[1]

The primary question presented in this appeal is how to interpret the above-quoted condition of James's probation. The State argues that this provision constituted a grant of authority to James's probation officers: it authorized James's probation officers to search his residence for contraband even if James refused to consent to the search. The Jameses, on the other hand, argue that this provision did not grant any authority to Gregory James's probation officers; rather, the provision placed an obligation on James to consent to any search for contraband initiated by his probation officers.

According to the Jameses' interpretation of the provision, Brunger had no greater right to search Gregory James or his residence than she would to search the person or residence of any other citizen. Thus, according to the Jameses, Brunger could not search their house until she secured a search warrant (or showed that the search was supported by a recognized exception to the warrant requirement). The respondents concede that Gregory James's condition of probation required him to consent to the requested search. The respondents further concede that, if James had given his consent, then Brunger could validly have conducted a warrantless search of the house (because consent searches are a recognized exception to the warrant requirement). But the respondents contend that, even though Gregory James broke his condition of probation by refusing to consent to the search, he did not thereby augment Brunger's authority to conduct a warrantless search of the residence. Rather, James's refusal to consent to the search meant that he faced revocation of his probation for failure to abide by the terms of probation.

In essence, the respondents argue that the superior court could revoke James's probation because he refused to consent to Brunger's search, but Brunger and the police officer who accompanied her violated the search and seizure provisions of the federal and state Constitutions when, having met with James's refusal, they searched his residence without a warrant.

### The meaning of James's condition of probation

1. AS 11.71.040(a)(2), (a)(3)(G), and (a)(5).

In *Soroka v. State*[2], the Alaska Supreme Court recognized the common-law authority of a probation officer to search a probationer's residence without a warrant, even when no specific condition of probation authorized the search, so long as the probation officer had probable cause to believe that the probationer had violated the terms of probation. However, the supreme court limited this common-law authority in *Roman v. State*[3]. In *Roman*, the court held that warrantless searches of probationers and parolees would thenceforth be lawful only if the sentencing court or the Parole Board had specifically authorized warrantless searches in the conditions of the defendant's probation or parole.[4]

In one respect, the authority to conduct warrantless searches granted in *Roman* is considerably broader than the common-law authority recognized in *Soroka:* under *Soroka*, a warrantless search conducted without the benefit of a specific condition of probation had to be supported by probable cause[5]; but under *Roman*, warrantless searches authorized by a condition of probation or parole could be conducted "without the probable cause necessary for [the] issuance of a search warrant".[6] On the other hand, *Roman* declared that sentencing courts and the Parole Board do not have unlimited authority to impose warrantless-search conditions: rather, such conditions will be allowed only when the record establishes "a reasonable nexus" between the defendant's underlying conduct and the decision of the court or the Board to allow warrantless searches.[7]

In the present appeal, the Jameses do not ask us to re-examine *Roman*'s central holding: that a sentencing court has the power to authorize warrantless searches of a probationer's person and residence. Nor do the respondents dispute that Gregory James's underlying conduct (misconduct involving controlled substances) provided the sentencing court with the necessary foundation or "nexus" to justify the inclusion of a warrantless-search provision among the conditions of James's probation. In sum, the respondents do not challenge the sentencing court's legal authority to limit Gregory James's search and seizure rights as a condition of his probation. Rather, as explained above, the respondents question whether the sentencing court actually imposed such a condition of probation.

The disputed condition of probation directs Gregory James to "submit to a search of [his] person, personal property, residence[,] or any vehicle in which [he might] be found for the presence of contraband" upon the request of a probation officer. As we noted in *Joubert v. State*[8], the language of this provision appears to be worded so as to impose an obligation upon the probationer rather than to grant authority to the probation officer.[9] However, when a court construes a legal document—such as the criminal judgement rendered against James (the document that contains his conditions of probation)—a court must examine whether disputed words or phrases have acquired an accepted meaning, either by statutory definition or through prior judicial decision.[10]

No Alaska decision has previously construed the legal effect of a provision requiring a probationer or parolee to "submit" to a search. But such phrasing is commonly em-

2. 598 P.2d 69, 71 (Alaska 1979).

3. 570 P.2d 1235 (Alaska 1977); *see also Soroka*, 598 P.2d at 71 n. 8 (recognizing that *Roman* governed this question of law in future cases).

4. *Roman*, 570 P.2d at 1243–44.

5. 598 P.2d at 71 & n. 5.

6. *Roman*, 570 P.2d at 1244; *see also Soroka*, 598 P.2d at 71 n. 5 (recognizing that, if the conditions of a defendant's probation authorize searches on demand, "no showing of probable cause would [be] necessary").

7. *Roman*, 570 P.2d at 1244; *see also id.* at 1242.

8. 926 P.2d 1191 (Alaska App.1996).

9. *Id.* at 1193.

10. *See, e.g., Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp.*, 365 U.S. 1, 8, 81 S.Ct. 435, 439, 5 L.Ed.2d 377 (1961); *Alaska Federation for Community Self–Reliance v. Alaska Public Utilities Comm'n*, 879 P.2d 1015, 1019 n. 4 (Alaska 1994); *South Anchorage Concerned Coalition, Inc. v. Coffey*, 862 P.2d 168, 173 n. 12 (Alaska 1993); *W.R. Grasle Co. v. Alaska Workmen's Compensation Bd.*, 517 P.2d 999, 1002 (Alaska 1974).

ployed by sentencing courts and parole boards throughout the United States:

> Among the conditions [of probation] more commonly imposed is the requirement that in order to get probation, the probationer must consent to warrantless searches of his person and property. The precise terms of the condition vary widely among the jurisdictions[, but the] most commonly used [phrasing] requires the probationer to submit to warrantless searches at any time of the day or night by any law enforcement officer.

Annotation: "Validity of [the] Requirement that, as a Condition of Probation, [the] Defendant Submit to Warrantless Searches", 79 A.L.R.3d 1083, 1086 (1977).

The courts of Oregon have construed this "submit" language in the manner now advocated by the Jameses. That is, the Oregon courts have ruled that this language does not authorize probation officers to search a probationer's person and property without a warrant. Rather, this language means only that the probationer promises to waive their Fourth Amendment rights in the future (whenever they are asked to do so by a probation officer). If the probationer later refuses to honor their promise (that is, if they refuse to waive their Fourth Amendment rights when requested to do so by a probation officer), then their probation can be revoked for the breaking of the promise, but no warrantless search can be conducted.[11]

It appears, however, that Oregon stands alone in their interpretation of the disputed language. Other courts, faced with the interpretation of similar provisions (that is, provisions requiring a probationer to "submit" to a search), have consistently interpreted these provisions to authorize warrantless searches by probation officers regardless of whether the probationer has expressly consented to the search—and even in the face of refusal or resistance by the probationer.[12] In fact, over twenty years ago, the Ninth Circuit instructed sentencing judges to use this very language when they wished to authorize warrantless searches of a probationer's person and property. In *United States v. Consuelo-González* [13], the Ninth Circuit ruled that warrantless searches of probationers were constitutional, and the court recommended that sentencing judges impose the following condition of probation to authorize such searches:

> That [the defendant] submit to search of [his or] her person or property conducted in a reasonable manner and at a reasonable time by a probation officer.

*Consuelo-González*, 521 F.2d at 263.

Thus, even though the "submit" phrasing of Gregory James's condition of probation might conceivably be read in the way he and his wife suggest, we reject this interpretation because it is inconsistent with established judicial usage. As shown by the annotation and by the various court decisions cited here, when a sentencing court orders a defendant to "submit" to warrantless searches at the request of a probation officer, this language expresses the concept that the court has authorized the probation officer to conduct a warrantless search even if the probationer refuses to consent at the time of the search.

The Jameses argue that this result is constitutionally suspect because, if the challenged condition of probation is interpreted this way, "probation searches could be conducted [at] the mere whim of the [probation] officer". We recognize that a probation officer's authority to conduct warrantless searches could conceivably be misused to ha-

11. See *State v. Davis*, 133 Or.App. 467, 891 P.2d 1373, 1378–79 (1995); *State v. Hindman*, 125 Or.App. 434, 866 P.2d 481, 482 (1993).

12. *Owens v. Kelley*, 681 F.2d 1362, 1366–68 (11th Cir.1982); *People v. Kasinger*, 57 Cal. App.3d 975, 129 Cal.Rptr. 483, 484 (1976); *People v. Turner*, 54 Cal.App.3d 500, 126 Cal.Rptr. 652, 653 (1976); *State v. Peters*, 130 Idaho 960, 950 P.2d 1299, 1302 (Idaho App.1997); *People v. Hellenthal*, 186 Mich.App. 484, 465 N.W.2d 329,

330 (1990) (*semble*); *State v. Benton*, 82 Ohio St.3d 316, 695 N.E.2d 757, 762 (1998); *Himmage v. State*, 88 Nev. 296, 496 P.2d 763, 765–66 (1972); *People v. Fortunato*, 50 A.D.2d 38, 376 N.Y.S.2d 723, 726–27 (1975); *State v. Martinez*, 811 P.2d 205, 209 (Utah App.1991); *Anderson v. Commonwealth*, 25 Va.App. 565, 490 S.E.2d 274, 279 (1997).

13. 521 F.2d 259 (9th Cir.1975) (en banc).

rass a probationer. But the present case does not raise this problem.

It is undisputed that Officer Brunger came to the James residence to conduct an initial visit with a newly-assigned probationer. This was a reasonable exercise of her authority, and it was sufficient justification for her entry into the residence pursuant to Gregory James's condition of probation. (Were this not enough, we note that Brunger had even more justification for the search by the time she entered: for when she approached the door, she could smell the odor of growing marijuana.) We therefore hold that the probation officer's warrantless search of the Jameses' residence was lawful because it was conducted pursuant to the authority granted by the sentencing court in Gregory James's conditions of probation.

 Ann James asserts that, even though her husband was on probation, she retained her right to object to searches of her home, person, and possessions. This is only partially true.

[When a] probationer is sharing living quarters with another person who is not subject to similar conditions, ... the probation officer and the people working under [the officer's] direction may search all parts of the premises that the probationer has common authority to use.

*Milton v. State,* 879 P.2d 1031, 1034 (Alaska App.1994).

In this case, there is no assertion that the probation officer (or the police officer who assisted her) exceeded the proper bounds of a probation search. That is, the Jameses do not contend that evidence was seized from areas of the residence that were exclusively under Ann James's control.

The decision of the superior court is REVERSED, and this case is remanded for further proceedings on the indictments against the two respondents.