**Certiorari Denied, March 24, 2010, No. 32,254**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-035**

**Filing Date: January 29, 2010**

**Docket No. 28,636**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**ANDREW BENAVIDEZ,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**CASTILLO, Judge.**

**{1}** Defendant, a parolee, appeals a search of his home that was conducted pursuant to conditions of his parole. We conclude that the Fourth Amendment does not prohibit parole searches that are based on reasonable suspicion of a parole violation and that in the present case the parole officer had reasonable suspicion to conduct the contested search. We do not address Defendant's state constitutional claim because it was not properly preserved. Lastly,

1

we do not consider whether there was sufficient evidence of constructive possession because Defendant failed to reserve this argument in his plea agreement. For these reasons, we affirm the district court.

## I.    BACKGROUND

{2}    The following facts are derived from the record. On July 11, 2007, Defendant's parole officer observed Defendant driving a car. A short time later, the parole officer and his supervisor arrived at Defendant's house to conduct a routine visit. When the parole officer arrived, he saw the same car that Defendant had been driving earlier. The parole officer knocked on the door and announced himself but received no response. While he was waiting for a response, the parole officer noticed the curtains and blinds moving in the room that he knew to be Defendant's.

{3}    The parole officer called for police back up. During the twenty minutes that it took for the police to arrive, the parole officer continued to knock and announce—and continued to receive no response. When the police arrived, the door was kicked in, and the officers searched the house room by room. Defendant was located in his bedroom, under his bed, and when he came out, the parole officer asked why he had been hiding. Defendant responded that he had missed a parole meeting with the officer. Defendant was taken outside, and the officers continued to search the house. In a set of dresser drawers in the same bedroom where Defendant was found, the parole officer located Defendant's identification card, a pipe, and a baggie with a small amount of methamphetamine.

{4}    Defendant was charged by criminal information in district court for one count of possession of a controlled substance and one count of possession of drug paraphernalia. He filed a motion to suppress the drug evidence, which the district court denied. Defendant then entered into a conditional plea agreement. He pled guilty to one count of possession of a controlled substance, the paraphernalia charge was dropped, and he reserved the right to appeal the legality of the search of his home.

## II.    DISCUSSION

{5}    Defendant makes two basic arguments on appeal. He first contends that the district court improperly denied his motion to suppress the drug evidence because the search of his home was constitutionally unreasonable. He also argues that the evidence should have been suppressed because there was insufficient evidence to submit the issue of constructive possession to a jury. We begin with the validity of the search.

### A.    Validity of the Search

{6}    Defendant raises four challenges to the search. First, he claims that the district court erred in not requiring the parole officer to have reasonable suspicion of criminal activity before conducting the warrantless search. Defendant also contends that it was not reasonable to forcibly enter Defendant's home under the circumstances of this case. Additionally, Defendant challenges the legality of the continued search of the home after Defendant was

located inside. In his last point, Defendant argues that Article II, Section 10 of the New Mexico Constitution requires that parole officers obtain a warrant before conducting a probation or parole search that is based on reasonable suspicion of a probation or parole violation. We will first set out the general standard of review for suppression orders, and then we will address each of Defendant's points.

## 1. Standard of Review

**{7}** "The legality of a search questioned in a suppression hearing is generally tested as a mixed question of law and fact wherein we review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Baca*, 2004-NMCA-049, ¶ 11, 135 N.M. 490, 90 P.3d 509 (internal quotation marks and citation omitted). We indulge all reasonable inferences in support of the district court's factual determination, and we disregard all inferences or evidence to the contrary. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

## 2. Basis for Warrantless Search

**{8}** Pursuant to the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Normally, the search of a home is only reasonable for Fourth Amendment purposes if it is conducted pursuant to a warrant grounded in probable cause." *Baca*, 2004-NMCA-049, ¶ 21. The warrant requirement protects citizens' reasonable expectations of privacy in their homes. *Chavez v. Bd. of County Comm'rs*, 2001-NMCA-065, ¶ 21, 130 N.M. 753, 31 P.3d 1027 ("[T]he Fourth Amendment . . . was intended to protect the sanctity of an individual's home and privacy.").

**{9}** The privacy rights of parolees and probationers, however, are subject to limitations which have been addressed by the United States Supreme Court in three cases: *Griffin v. Wisconsin*, 483 U.S. 868 (1987); *United States v. Knights*, 534 U.S. 112 (2001); and *Samson v. California*, 547 U.S. 843 (2006). We provide a brief overview of these cases because they provide the basis for much of our analysis.

**{10}** In *Griffin*, the Court evaluated a Wisconsin policy and held that a warrantless search of a probationer conducted pursuant to the policy did not violate the Fourth Amendment because the state's "special needs"—as articulated through its probation policies—"'justif[ied] departures from the usual warrant and probable-cause requirements." 483 U.S. at 873-74. The Court observed that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" *Id.* at 874 (alteration in original) (citation omitted). *Griffin* held that Wisconsin's policy requiring "reasonable grounds" to search probationers for violations of probation conditions met the minimum standards required under the Fourth Amendment. 483 U.S. at 880.

3

**{11}** The *Knights* Court addressed the question of whether warrantless searches of probationers by law enforcement officers, not probation officers, are constitutional when such searches are supported by less than probable cause. In that case, the defendant's probation order required him to "[s]ubmit his . . . person, property, place of residence, vehicle, [and] personal effects, to [a] search at anytime, with or without a search warrant, warrant of arrest[,] or reasonable cause by any probation officer or law enforcement officer." 534 U.S. at 114 (internal quotation marks omitted). Because the search at issue in *Knights* was conducted by a law enforcement officer, the Court did not apply the special-needs doctrine discussed in *Griffin*. Instead, the *Knights* Court used a totality of the circumstances test to evaluate the reasonableness of the search "with the probation search condition being a salient circumstance." 534 U.S. at 118. The Court ultimately found that because probationers have a lesser expectation of privacy than do free citizens, and because the probation condition put the defendant on notice of his limited privacy rights, the defendant's "reasonable expectation of privacy" was "significantly diminished." *Id.* at 119-20. As such, a search based on reasonable suspicion did not violate the defendant's Fourth Amendment rights. *Id.* at 121-22.

**{12}** In *Samson*, the Court considered "whether a suspicionless search, conducted under the authority of [a California statute], violates the Constitution." 547 U.S. at 846. That case involved a challenge by a parolee to a California law. *Id.* The defendant was a parolee, not a probationer and, in this regard, the *Samson* Court stated that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850. The Court applied the totality of the circumstances approach, not the special needs rationale of *Griffin*, and concluded that searches under the California law were constitutional because a parolee does "not have an expectation of privacy that society would recognize as legitimate." *Samson*, 547 U.S. at 852. Further, the Court held that the state has an "overwhelming interest" in supervising parolees because "parolees . . . are more likely to commit future criminal offenses." *Id.* at 853 (internal quotation marks and citation omitted).

**{13}** The Court also acknowledged that a state's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. *Id.* The Court balanced the parolee's expectation of privacy against the State's interest in supervising parolees and held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 848, 853, 857.

**{14}** Accordingly, as we address the question of a search of the home of a parolee, we look to the Supreme Court's two exceptions to the warrant requirement: (1) the special needs exception and (2) the totality of the circumstances exception. *United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009). Both apply to a parolee.

**{15}** In his parole agreement, Defendant agreed to comply with "Rules for Extreme Level Supervision" and "Rules for Home Visits." The home visit rules required Defendant to promptly answer the door, assure that parole officers have "safe and open access" to his home, and to general conditions regarding his behavior before and during the home visits.

**{16}**   As a further condition of parole, Defendant agreed to "submit to reasonable [warrantless] searches per Probation and Parole Division [PPD] Policy." The relevant PPD Policy (PPD Policy) governs searches of "an offender's person, home, or property by field officers." http://corrections.state.nm.us/policies/current/CD-050700.pdf. According to the policy, a parole officer may search when there is reasonable suspicion to believe either (1) that "the offender is in possession of prohibited items" or (2) that "a violation of [the] conditions of probation or parole has occurred." *Id.* There is no dispute as to the parole violation. Defendant concedes that the failure to answer the door in response to the parole officer's knock was a parole violation. Even though he makes this concession, he argues that the policy is unconstitutional, that the parole officer failed to comply with the policy, and that *Baca* should be read to limit warrantless searches under the policies to only those cases wherein the parole officer has reasonable suspicion of criminal activity.

**a.      Constitutionality of PPD Policy**

**{17}**   We turn to *Samson*, 547 U.S. 843, for direction in analyzing the constitutionality of the PPD policy. *Samson* involved the suspicionless search of a parolee's person under a California statute that authorized the warrantless, suspicionless search. Defendant argues that *Samson* is irrelevant because the Court simply approved California's policy requiring parolees to consent to warrantless, suspicionless searches. According to Defendant, *Samson* does not apply because New Mexico's parole policy requires reasonable suspicion, and *Samson* "did not alter the requirement that the local government follow the regulatory system that it has adopted for parole searches." This argument, however, disregards the underlying effect of the case: *Samson* sets the constitutional floor for permissible parole and probation searches pursuant to a state's policy. The California law discussed in *Samson* was held constitutional, and it permits searches at any time, with or without a warrant or cause. *Id.* at 846. Consequently, it follows that the New Mexico policy, which affords greater protection than the California policy by allowing warrantless searches limited to those supported by reasonable suspicion of parole violations, is constitutional as well.

**b.      Application of Policy**

**{18}**   Defendant next challenges the application of the PPD Policy. Citing to *Coleman v. Commonwealth*, 100 S.W.3d 745 (Ky. 2002), Defendant asserts that the parole officer's entry into Defendant's home was not authorized under the policy and was therefore unconstitutional. *Coleman* is distinguishable. In *Coleman*, the parole officer claimed that the search was based on reasonable suspicion of a probation violation. *Id.* at 754-55. The facts, however, did not bear out his position. *Id.* The defendant in *Coleman* was not home when the parole officer entered his home and, at that time, the parole officer had no grounds to believe that the defendant had violated parole. The *Coleman* court ruled the search unconstitutional because the parole officer had no reasonable suspicion of a parole violation prior to entering the defendant's residence. *Id.* Defendant here argues that the parole officer did not go to Defendant's house with any suspicion. That is true. But once the parole officer arrived and Defendant did not open the door for a home visit, the situation changed. Defendant concedes that the failure to answer the door in response to the parole officer's knocks "would amount to a parole violation." It follows that once Defendant failed to

5

answer the door as required by his parole agreement, the parole officer had reasonable suspicion that there was a parole violation—a ruling made by the district court in this case. *Coleman* does not support Defendant's argument.

**{19}** Defendant also cites to *Baca* and urges us not to "expand the *Baca* holding to allow the warrantless entry into a home based on less than reasonable suspicion of criminal activity." We agree that *Baca* holds that "warrantless probation searches can and must be supported by reasonable suspicion as defined in New Mexico law to be an awareness of specific articulable facts, judged objectively, that would lead a reasonable person to believe criminal activity occurred or was occurring." *Baca*, 2004-NMCA-049, ¶ 43. However, the *Baca* Court specifically declined to address the breadth of the reasonable cause requirement in a parole policy based on a violation of a condition of probation. *Id.* ¶ 38 n.3. This unanswered question is squarely before us in the present appeal.

**{20}** Defendant relies on general Fourth Amendment law regarding the constitutional safeguards protecting homes from warrantless searches and argues that it was not reasonable to forcibly enter Defendant's home based only on a suspicion that he might have violated his parole agreement. Defendant does not provide any specific authority that would address the holdings in *Griffin*, *Knights*, or *Samson*. The State relies on the special needs test enunciated in *Griffin* and the totality of the circumstances test set forth in *Knights*.

**{21}** We rely on *Griffin*. The language contained in the PPD Policy and in the parole agreement is clear. Defendant was required to answer the door when his parole officer knocked. The language of the Wisconsin policy reviewed in *Griffin* is similar to the New Mexico policy that authorizes reasonable warrantless searches when a parole officer has reasonable suspicion to believe that a violation of the conditions of parole has occurred. *Griffin*, 483 U.S. at 880 (holding that Wisconsin's policy requiring "reasonable grounds" to search probationers for violations of probation conditions met the minimum standards required under the Fourth Amendment). The district court here ruled that there was reasonable suspicion, and Defendant does not challenge that part of the ruling. Defendant's argument would have us ignore the conditions of parole and related PPD Policy. This we cannot do. Thus, we hold that the initial warrantless search did not violate the Fourth Amendment.

**c.      Consent to Search**

**{22}** Defendant also argues that the parole officer's failure to obtain Defendant's consent to enter the home rendered the officer's forcible entry into the home unreasonable. Specifically, Defendant maintains that in the parole agreement, he "agreed to consent to a warrantless search if so requested by a parole officer" and that the agreement does not "authorize a parole officer to search without first contacting the parolee and allowing him to consent in accordance with his contract." The out of state cases cited by Defendant do not support his position.

**{23}** In *Joubert v. State*, 926 P.2d 1191 (Alaska Ct. App. 1996), a probation officer conducted a warrantless search while the defendant was not at home. *Id.* at 1192. A

6

probation condition required the probationer to "submit to a search of [his] . . . residence upon request of a probation officer." *Id.* at 1193 (alterations in original) (internal quotation marks omitted). The *Joubert* court concluded that because the probation condition was worded so that "the probation officer's authority to search is premised on [the defendant] receiving notice of the intended search," the probation officer was required "to communicate in some way with the probationer before conducting a search." *Id.* at 1193-94. *Joubert* is factually distinct from the present case. First, Defendant's parole agreement simply states "I will submit to reasonable warrantless searches," and it does not require the parole officer to make a request to search. Second, the defendant in *Joubert* was not present when the probation officer arrived, was not given notice of the search, and was not given a chance to refuse to submit to the search. Unlike the facts in *Joubert*, Defendant had an opportunity—twenty minutes—to communicate with the parole officer and either grant or refuse permission to search. Considering the evidence that Defendant was inside the house, it was reasonable for the parole officer to conclude that Defendant's failure to respond to the knocking was not an expression of consent.

**{24}** Defendant also relies on another Alaska case, *State v. James*, 963 P.2d 1080 (Alaska Ct. App. 1998), but *James*, like *Joubert*, is unavailing. In *James*, as a condition of probation, the defendant was required to submit to a warrantless search of his home for the presence of contraband upon the request of a probation officer. *Id.* at 1081. The officer requested to search the defendant's home, and he refused to consent. *Id.* The officer searched the home nevertheless. *Id.* The defendant argued that the search violated the Fourth Amendment because his refusal to honor the condition of probation could only result in a revocation, not a warrantless search. *Id.* Although the *James* court observed that the Oregon courts have interpreted this probation condition as *James* argued, it also concluded that the Oregon courts appear to stand alone in their interpretation of the disputed language. *Id.* at 1083. Thus, the court in *James* upheld the warrantless search concluding that Alaska would join with other courts that "have consistently interpreted these provisions to authorize warrantless searches by probation officers regardless of whether the probationer has consented . . . and even in the face of refusal or resistance by the probationer." *Id. James* does not advance Defendant's case.

**{25}** Defendant also points us to Oregon law and relies on *State v. Davis*, a case in which the Oregon Court of Appeals stated that "a probation condition that requires a probationer to submit to searches does not constitute a self-executing, prospective consent by the probationer to a general warrantless search." 891 P.2d 1373, 1378 (Or. Ct. App. 1995). Despite this general statement, however, the court in *Davis* concluded that because the defendant had "ample opportunity to refuse the search" as well as knowledge that he had agreed to submit to searches as a condition of probation, the defendant's failure to expressly consent to the search did not require the suppression of the evidence discovered. *Id.* at 1378, 1379-80. In the present case, Defendant was aware of the conditions of his parole and, as we have explained in the previous paragraph, Defendant had "ample" opportunity to refuse entry. *See id.* Accordingly, even under *Davis*, Defendant's motion to suppress would have been properly denied.

3.  **Kicking in the Door**

**{26}**     Defendant also challenges the parole officer's manner of conducting the search—kicking in the door and entering the home—as unreasonable. Defendant, however, fails to cite any authority to support an argument that there were no grounds "to forcibly kick in the door." Nothing in the PPD Policy restricts the conduct of a parole search. *See* http://corrections.state.nm.us/policies/current/CD-050700.pdf. As we have explained, the parole officer knocked on the door and announced his identity for twenty minutes, and Defendant refused to respond. In order to investigate the suspected parole violation—failure to submit to a search—the officer was required to enter the premises. Because Defendant did not answer the door, there appears to have been no alternative for the parole officer apart from forced entry. *See State v. Attaway*, 117 N.M. 141, 147, 870 P.2d 103, 109 (1994) ("The officer may break open any outer or inner door or window of a house, or any part of a house, or any thing therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." (internal quotation marks and citation omitted)), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, 138 N.M. 9, 116 P.3d 80. In the absence of authority, we conclude that the initial entry and search for Defendant was reasonable under the Fourth Amendment.

### 4.     Continued Search

**{27}**     Defendant also challenges the scope of the search. According to Defendant, the parole officer needed reasonable suspicion of a new parole violation or criminal activity to continue to search after the initial suspicion regarding the parole violation was quelled and after Defendant was removed from the home. There is general language banning routine searches without reasonable suspicion: "This policy is in no way to be construed as giving authority to PPD staff to conduct routine searches of offenders or their property without reasonable suspicion, but specifically limits the occasions when such activities will occur." Probation and parole searches are thus strictly limited to those circumstances in which a probation or parole officer has reasonable suspicion of a violation, contraband, or criminal activity. *See id.*; *Baca*, 2004-NMCA-049, ¶ 43. There is nothing addressing whether once evidence of contraband or a violation is discovered, a parole officer may continue to search for evidence of further violations. The policy authorizing warrantless searches is silent regarding the scope of authorized searches.

**{28}**     We therefore consider, in the present case, whether the parole officer could continue to search Defendant's house after the officer confirmed his initial suspicion that Defendant had violated his parole. Defendant argues that the parole officer did not articulate any additional suspicion to support the continued search.

**{29}**     The State relies on all of Defendant's actions as grounds for the search. Reasonable suspicion is evaluated under the totality of the circumstances. *See State v. Talley*, 2008-NMCA-148, ¶ 6, 145 N.M. 127, 194 P.3d 742 (analyzing the "reasonableness of the law enforcement officers' course of conduct . . . by examining the totality of the circumstances"). Thus, we are inclined to evaluate the entire encounter and look to Defendant's behavior throughout the incident. This would include the movement of the curtains, the failure to acknowledge the parole officer's presence for twenty minutes,

8

Defendant's hiding under the bed to avoid an encounter, and Defendant's response to the parole officer's question as to why he had not answered the door. Defendant stated that he had missed a parole meeting. The parole officer found this response to be an unsatisfactory explanation for refusing to answer the door and for hiding under the bed.

**{30}** Defendant characterizes the parole officer's disbelief as "unsupported intuition." We disagree. The Supreme Court of the United States has explained that in the context of parole and probation searches, the parole officer's experiences with the client, as well as the officer's experiences in other similar circumstances, is relevant to the reasonable suspicion inquiry. *See Griffin*, 483 U.S. at 878-79 (acknowledging the value of "an ongoing supervisory relationship" between officer and client). Further, when evaluating whether reasonable suspicion exists, we look to the facts presented "in light of common sense and . . . human experience." *See United States v. Mendez*, 118 F.3d 1426, 1431-32 (10th Cir. 1997) (evaluating the contradictory and implausible information given by the driver using common sense and human experience). A reasonable person would question Defendant's reasons for refusing to answer the door and then for hiding under his bed, especially in light of the fact that Defendant knew he was required to cooperate with home visits as a condition of probation and that a probation violation would allow a warrantless search of his home. Defendant's reason was that he hid because he had missed a parole meeting. The parole officer relied on his experience as well as his common sense in determining that based on Defendant's odd behavior, there was a likelihood that Defendant possessed contraband or had violated his parole in some other way. This is more than "unsupported intuition."

**{31}** "[W]hether a search is unreasonable is determined by balancing the degree of intrusion into a probationer's [or a parolee's] privacy against the interest of the government in promoting rehabilitation and protecting society." *Baca*, 2004-NMCA-049, ¶ 32. Defendant argues that the State's interest in further investigation was minimal because there was no reasonable suspicion of criminal activity. The statute authorizing parole, however, dictates that the purpose of parole is to "treat persons convicted of crimes based on their individual needs 'when a period of institutional treatment is deemed essential in the light of the needs of public safety and their own welfare.'" *State v. Utley*, 2008-NMCA-080, ¶ 9, 144 N.M. 275, 186 P.3d 904 (quoting NMSA 1978, § 31-21-4 (1963)). Thus, the purposes of parole—and as a result, the State's interest in the continued search—are twofold: the protection of society as well as the rehabilitation of the individual, both of which could have been threatened had Defendant violated the conditions of his parole.

**{32}** Defendant's argument also disregards his own lessened expectation of privacy as a result of his status as a parolee. The Supreme Court of the United States has acknowledged the same limited expectation of privacy for parolees. *Samson*, 547 U.S. at 850 ("[P]arolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.").

**{33}** Defendant contends that because the California law of parole differs from the New Mexico law of parole, New Mexico parolees have a heightened expectation of privacy. Specifically, Defendant argues that parole is required by statute for certain offenses, while in California, parole is an "early release system" and, as a result, "New Mexico parolees

9

have a greater expectation of privacy than do California parolees." We are unpersuaded.

**{34}**    *Samson* did not rely on the consideration that in California parole can be construed as "a privilege of early release." Instead, the Court concluded that parole is more like imprisonment than probation. 547 U.S. at 850. Looking to our own statutes, we see a similar analogy between parole and imprisonment. According to NMSA 1978, Section 31-21-10(E) (2007) (amended 2009), "[e]very person while on parole shall remain in the legal custody of the institution from which the person was released, but shall be subject to the orders of the board." An inmate is required to submit to "a written statement of the conditions of parole" or the inmate will not be released. *Id.* Parole, therefore, is "an established variation on imprisonment," and "parolees have fewer expectations of privacy than probationers." *Samson*, 547 U.S. at 850 (internal quotation marks and citation omitted). In New Mexico, "[p]robation status significantly reduces a probationer's expectation of privacy," *Baca*, 2004-NMCA-049, ¶ 42. Because parolees have an even lower expectation of privacy than a probationer, we are satisfied that under *Samson* and New Mexico law, Defendant had a reduced expectation of privacy.

**{35}**    We also look to New Mexico law. In *State v. Ponce*, we held that the search of the defendant's vehicle after his arrest for a parole violation was reasonable. 2004-NMCA-137, ¶ 28, 136 N.M. 614, 103 P.3d 54. In *Ponce*, we looked to the totality of the circumstances as well as the defendant's reduced expectation of privacy as a parolee. *Id.* The defendant was under an excessively high assessment of risk of violation of probation and had agreed to abide by a PPD policy that allowed staff of the PPD to conduct a search of an offender's home when there was reasonable cause to believe that evidence of a violation would be found. *Id.* ¶¶ 12, 28. Before his arrest, the defendant had been subject to a pat-down search which revealed a large sum of cash in small bills in spite of the parole officer's understanding that the defendant was unemployed. *Id.* ¶ 28. The defendant had lied about how he had arrived at the probation office. *Id.* Based on these facts, we held that the probation officers had a reasonable basis to search the defendant's vehicle for evidence of another probation violation. *Id.* Similarly, here Defendant's behavior, his unsatisfactory explanation for hiding under his bed, and Defendant's reduced expectation of privacy all support the scope of the search in the present case. Further, the parole officer's obligations to public safety and to Defendant's rehabilitation outweighed Defendant's privacy interest. *See People v. Young*, 923 P.2d 145, 151 (Colo. Ct. App. 1995) (upholding a warrantless parole search, which continued after the officers discovered evidence to verify the suspected parole violation). In this case, based on the totality of the circumstances, we hold that the parole officer had reasonable suspicion to continue the search.

**5.       New Mexico Constitution**

**{36}**    Defendant's final argument relating to the propriety of the search is that the New Mexico Constitution provides greater protection for searches of parolees than the United States Constitution provides. The State argues that Defendant failed to preserve this argument. We agree with the State.

**{37}**    The New Mexico Supreme Court, in *State v. Gomez*, 1997-NMSC-006, 122 N.M.

10

777, 932 P.2d 1, established the framework for assessing whether a state constitutional claim with a federal analog was preserved. "If established precedent construes the [state constitutional] provision to provide more protection than its federal counterpart, the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the [district] court to rule on the issue." *Id.* ¶ 22. Where there is no precedent interpreting a state constitutional right differently than its federal equivalent a litigant must meet a higher burden. *Id.* ¶ 23. In these cases, "a party also must assert in the [district] court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently from the federal provision." *Id.* (emphasis omitted). Having set forth the appropriate framework to evaluate whether Defendant's state constitutional claim was preserved, we examine whether he has satisfied these requirements.

**{38}** Defendant provided the following argument in his motion to suppress:

> In New Mexico, with regard to probationers, any search is unreasonable unless an officer has a reasonable suspicion that a crime has occurred. [*Baca*], 2004-NMCA-049, ¶ 37[.] Reasonable suspicion is to be construed by New Mexico case law. *Id.* [] ¶ 38. The New Mexico Constitution should be interpreted to extend this rule to parolees.

Defendant fails to direct us to any additional discussion of the issue, and we were unable to locate in the record any further development of Defendant's state constitutional argument. No mention was made of this argument during the motion hearing.

**{39}** Defendant's limited discussion of his state constitutional claim does not satisfy the two requirements of the framework established in *Gomez*. With respect to the first of these two requirements, Defendant's motion fails to assert the constitutional principle that provides the protection he seeks under the New Mexico Constitution. Defendant merely cites *Baca* and, without identifying a specific article or section of the New Mexico Constitution, claims that the New Mexico Constitution should be interpreted to provide parolees the rights afforded to probationers in *Baca*. The holding in *Baca* was based on the Fourth Amendment to the United States Constitution and explicitly rejected the state constitutional arguments advanced therein. *See Baca*, 2004-NMCA-049, ¶¶ 30-35, 37 (holding that the federal case law construing the protections provided by the Fourth Amendment guides our analysis of warrantless probation searches). Without more specific guidance, we are unable to conclude that Defendant has identified a specific state constitutional principle which provides the protection he seeks.

**{40}** Even if we were to infer that Defendant could only have been relying on Article 2, Section 10 of the New Mexico Constitution for a claim that parolees should have more protection under the state constitution than under its federal counterpart, Defendant has failed to satisfy the second of the *Gomez* requirements—he did not establish the factual basis for his claim. Instead, he merely cited *Baca* and claimed that the rights discussed in that case should apply to him. *Baca* does not advance his arguments for additional protection under

11

the state constitution and, in any case, the cite to *Baca* does not, in our view, constitute the establishment of a factual basis for a state constitutional claim. Accordingly, we do not consider Defendant's contention. *See State v. Jimenez*, 2007-NMCA-005, ¶ 13, 141 N.M. 106, 151 P.3d 67 (filed 2006) (declining to address an unpreserved argument made pursuant to the state constitution).

## B. Constructive Possession

**{41}** Pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658-59, 658 712 P.2d 1, 4-6 (Ct. App. 1985), Defendant argues that the evidence could not have established that he was in constructive possession of the methamphetamine discovered by the parole officer. The State contends that Defendant's plea agreement failed to reserve this issue for appeal. We agree with the State.

**{42}** Defendant's plea and disposition agreement makes the following reservation: "The defendant does not waive his right to an appeal on the issue of whether the search of his home was unreasonable." Although it is clear that Defendant preserved the issue of constructive possession by filing a motion to suppress the evidence of contraband, preservation is distinct from reservation. *See State v. Chavarria*, 2009-NMSC-020, ¶ 15, 146 N.M. 251, 208 P.3d 896 (explaining that preservation is "the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right" (internal quotation marks and citation omitted)). Defendant waived his right to appeal whether there was sufficient evidence to support constructive possession. We therefore do not consider the merits of the argument. *See id.* ¶¶ 10, 16 (refusing to reach the merits of a claim that was waived pursuant to an unconditional guilty plea).

## III. CONCLUSION

**{43}** We affirm the district court.

**{44}** **IT IS SO ORDERED.**

---
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

---
**MICHAEL D. BUSTAMANTE, Judge**

---
**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Benavidez*, No. 28,636**

**AE          APPEAL AND ERROR**

12

AE-PA       Preservation of Issues for Appeal
AE-SR       Standard of Review

**CT**           **CONSTITUTIONAL LAW**
CT-FA       Fourth Amendment

**CA**           **CRIMINAL PROCEDURE**
CA-PL       Parole
CA-RS       Reasonable Suspicion
CA-SZ       Search and Seizure
CA-WS      Warrantless Search