**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36596**

| | |
|---|---|
| STATE OF IDAHO, | 2011 Opinion No. 8 |
| Plaintiff-Appellant, | Filed: March 2, 2011 |
| v. | Stephen W. Kenyon, Clerk |
| CLIFTON TUREK, | |
| Defendant-Respondent. | |

Appeal from the District Court of the First Judicial District, State of Idaho, Boundary County. Hon. Steven C. Verby, District Judge.

Order granting motion to suppress evidence, affirmed.

Hon. Lawrence G. Wasden, Attorney General; Rosemary Emory, Deputy Attorney General, Boise, for appellant.

Clifton Turek, Bonners Ferry, pro se respondent.

_____

GUTIERREZ, Judge

The State of Idaho appeals from the district court's order granting Clifton Turek's motion to suppress evidence. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

On the morning of September 2, 2008, Turek was convicted of driving under the influence of intoxicants and placed on two years of supervised misdemeanor probation. One of the conditions of Turek's probation, to which he agreed, was that he was required to:

> [s]ubmit to searches of his/her person, residence, and any property under his/her control, without a warrant pursuant to probation supervision, at the request of the Probation Officer or Law Enforcement.[1]

_____

[1] The record indicates that Turek was informed of the conditions of his probation orally by the court and also signed a document listing the conditions.

He was also instructed to contact the Boundary County Adult Misdemeanor Probation office within two business days.

At approximately 12:21 p.m. on the same day, before Turek had met with the probation department, two probation officers and a sheriff's officer went to Turek's residence to conduct an "initial probation home visit." The officers did not get an answer after knocking on the door, but they could hear music coming from the residence and saw smoke coming from the chimney. The sheriff's officer proceeded to the back of the house and opened an unlocked shed door, looking for Turek. The officer discovered an active marijuana growing operation inside the shed. Turek was not present at any point and had not been advised that a visit and/or search would be taking place that day.

Turek was charged with manufacturing marijuana, Idaho Code § 37-2732(a)(1)(B), and possession of drug paraphernalia, I.C. § 37-2734A. He filed a motion to suppress evidence of the marijuana growing operation as having been found during an unconstitutional search. Following a hearing, the district court granted the motion. The state now appeals.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. . . ." *United States v. United States Dist. Court for Eastern Dist. of Michigan, Southern Division*, 407 U.S. 297, 313 (1972). Establishing that a search is reasonable ordinarily requires that the government demonstrate probable cause to a neutral magistrate and obtain a particularized warrant authorizing the search. *State v. Purdum*, 147 Idaho 206, 208, 207 P.3d 182, 184 (2009).

2

There are, however, limited exceptions to the warrant requirement for intrusions that are reasonable under the circumstances, such as searches conducted with consent voluntarily given by a person who has the authority to do so. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *State v. Stewart*, 145 Idaho 641, 644, 181 P.3d 1249, 1252 (Ct. App. 2008); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). Idaho precedent holds that a felony[2] probationer's consent to searches incorporated as a condition of probation provides justification for warrantless searches of the probationer's residence. *Purdum*, 147 Idaho at 208-09, 207 P.3d at 184-85; *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987); *State v. Buhler*, 137 Idaho 685, 687, 52 P.3d 329, 331 (Ct. App. 2002).

In granting Turek's motion to suppress, the district court concluded that no exception to the rule against warrantless searches applied to render the search of the outbuilding constitutional. The court first examined the condition of Turek's probation which required that he "submit to searches of his . . . person, residence, and any property under his . . . control without a warrant, pursuant to probation supervision at the request of the Probation Officer or Law Enforcement." The court found that the provision required that Turek submit to searches only *at the request* of the probation department or law enforcement. Because the officers on the scene did not request that Turek submit to a search of his property (as he was not present), the court concluded that the requisite consent was not granted by virtue of Turek's agreement to the conditions of probation. The court also found that because the officers had no right to search Turek's property pursuant to his probation agreement, the plain view doctrine could not justify the search when they found evidence of a marijuana operation in the shed, because they had discovered the evidence in a place they had no right to be.

The state advances two arguments on appeal in support of its contention that the district court erred in granting Turek's motion to suppress. First, it contends that the entry into the shed was reasonable and lawful, describing the action of the probation officer as a "visit." The state also contends that the district court erred in interpreting the probation condition as requiring the probation officers or law enforcement to request permission to search at the scene.

---

[2] This Court has previously held that there is no blanket prohibition against including a waiver of Fourth Amendment rights as a condition of probation whenever the underlying offense is a misdemeanor. *State v. Josephson*, 125 Idaho 119, 123, 867 P.2d 993, 997 (Ct. App. 1993).

We first dispense with the state's contention that probation officer "visits" without a warrant or without meeting a warrant exception are permissible. For its argument, the State relies upon a twenty-eight-year-old case, *State v. Pinson*, 104 Idaho 227, 657 P.2d 1095 (Ct. App. 1983). In *Pinson*, the defendant had not consented to searches as a condition of probation. His probation officer received telephone calls from Pinson's mother saying that he was in possession of drugs and may have burglarized a trailer next to the mother's home. The probation officer and a deputy sheriff went to the mother's home where Pinson was staying and confronted him at the front door. When Pinson asked for a search warrant, the officer said that he did not need one because, as a probation officer, he had authority to conduct warrantless searches of those under his supervision. Pinson then allowed the officers to enter. Shortly thereafter they asked him to pull up the legs of his pants. They noticed that there were lumps in his socks and directed him to remove the hidden items, which turned out to be marijuana and associated paraphernalia. In upholding the entry into the residence and search of Pinson's person, this Court held that the officer's entrance into the residence did not in itself constitute a search or an unreasonable intrusion. *Id*. at 233, 657 P.2d at 1101. However, the next sentence in *Pinson* notes that the probation officer had reasonable grounds to believe that Pinson had violated the terms of his probation and the search was related to confirming that violation. *Id*. Therefore, the entry was supported by reasonable suspicion which is consistent with well-developed law in this area that establishes that probation searches may be conducted without consent when the officers are there to investigate reasonable suspicion of violation of probation terms. *See State v. Klingler*, 143 Idaho 494, 497, 148 P.3d 1240, 1243 (2006); *State v. Anderson*, 140 Idaho 484, 487, 95 P.3d 635, 638 (2004).

Accordingly, we conclude that the state's reliance on *Pinson* is misplaced because in that case the entry was supported by reasonable suspicion, which is not present here, and neither Idaho appellate courts nor the United States Supreme Court has subsequently held that probation officers may enter probationers' homes without a warrant in the absence of either consent or reasonable suspicion. Moreover, even if *Pinson* is properly interpreted as authorizing entries without consent or reasonable suspicion, *Pinson* was addressing only an entry made after the probation officer had requested and been denied permission by the probationer. It did not endorse a warrantless entry made without the probationer's knowledge as occurred in the instant case.

4

We next examine whether Turek's agreement to submit to warrantless searches "at the request of" a probation officer or law enforcement official as a condition of his probation constituted requisite consent to render the search constitutional. The state contends that Turek waived his Fourth Amendment right to be free from warrantless searches when he agreed to the probation condition such that he consented in advance to the search and there was no need to obtain his consent at the scene, despite the language stating that Turek must submit to a search "at the request of" probation or law enforcement officials.

In *Gawron*, 112 Idaho 841, 736 P.2d 1295, the Idaho Supreme Court examined the effect of a probation condition by which Gawron had agreed to be subject to warrantless searches. There, a detective was investigating recent burglaries and found evidence linking them to Gawron, who was on probation. A term of his probation provided:

> That probationer does hereby agree and consent to the search of his person, automobile, real property, and any other property at any time and at any place by any law enforcement officer, peace officer, or probation officer, and does waive his constitutional right to be free from such searches.

*Id*. at 842, 736 P.2d at 1296. Accompanied by a probation officer, several police officers went to Gawron's residence and while Gawron was not present, conducted a search and found a marijuana bong in a bathroom. The officers proceeded to break a lock on the garage, then to break a lock on a toolbox found in the garage, in which they found items that were determined to be proceeds of the burglaries.

On appeal, Gawron argued that the probation condition constituted an unreasonable invasion of his Fourth Amendment rights. The Supreme Court disagreed, noting that persons conditionally released into society have a reduced expectation of privacy which thereby renders intrusion by government authorities "reasonable" which otherwise would be unreasonable or invalid under traditional constitutional concepts. *Id*. at 843, 736 P.2d at 1297. Specifically in regard to conditions of probation allowing warrantless searches, the Court noted that these provisions contribute to the effectiveness of supervision, foster rehabilitation, and protect public safety. *Id*. Further, the Court held, they fit within a "well-recognized" exception to the general rule requiring a search warrant in that they constitute valid, advance consent to such searches. *Id*. (citing *Zap v. United States*, 328 U.S. 624 (1946)).

In *Purdum*, 147 Idaho 206, 207 P.3d 182, the Idaho Supreme Court examined the effect of a similar term of probation which required that the defendant "submit to a random blood,

5

breath and/or urine analysis *upon the request* of the Court, his probation officer or any law enforcement official." *Id.* at 207, 207 P.3d at 183 (emphasis added). The court concluded, based on *Gawron*, 112 Idaho 841, 736 P.2d 1295, that this provision constituted a waiver of the probationer's Fourth Amendment right against warrantless searches. *Purdum*, 147 Idaho at 208, 207 P.3d at 184. Specifically, the Court determined that the term "random" was akin to the "at any time and at any place" language in *Gawron* and was, thus, a Fourth Amendment waiver. *Id.* at 210, 207 P.3d at 186. We note, however, that in neither *Gawron* nor *Purdum* did the Court have reason to address the precise issue in this case--in *Gawron* the search condition did not include the phrase "at the request of" and in *Purdum* the probationer was present at the time of the search. Whether a probation condition which requires that a probationer submit to warrantless searches "at the request of" a probation officer or law enforcement officer requires that the probationer be notified of the search and/or consent at the time of the search is an issue of first impression in Idaho.

We are unconvinced that *Gawron* and *Purdum* stand for the proposition that the type of probation condition at issue here constitutes a *complete* waiver of all Fourth Amendment rights, regardless of the actual language in the condition. The state's assertion that the acceptance of this probation condition constitutes an unfettered waiver of all Fourth Amendment rights against any warrantless search ignores a key component of the consent exception to the Fourth Amendment's proscription of warrantless searches--the *scope* of the consent. It is well settled that when the basis for a search is consent, the state must conform its search to the limitations placed upon the right granted by the consent. *State v. Ballou*, 145 Idaho 840, 849, 186 P.3d 696, 705 (Ct. App. 2008); *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Ballou*, 145 Idaho at 849, 186 P.3d at 705.

Thus, we must determine whether the search in this instance--where the officer proceeded into Turek's shed while Turek was not present--exceeded the scope of Turek's Fourth Amendment waiver. Several courts that have addressed the issue have concluded that the inclusion of "at the request of" in the search condition requires that any search conducted under

6

the authority of the provision be *preceded* by a request to search directed at the probationer.[3] In *Joubert v. State*, 926 P.2d 1191 (Alaska Ct. App. 1996), the Court of Appeals of Alaska addressed the constitutionality of a search of a probationer's house based on a probation condition which required that "[u]pon the request of a probation officer, [the probationer] submit to a search of your person, personal property, residence[,] or any vehicle in which you may be found for the presence of contraband." *Id*. at 1193. There, after knocking on the probationer's door, several probation officers and police officers were greeted by the probationer's daughter who informed them that the probationer was not home. The daughter allowed the officers to come inside, at which point they began searching the house, including the probationer's room after being told where it was. On appeal, the probationer contended the search was outside the scope of his consent, because the condition of probation imposed an obligation on the probationer to "submit" to a search upon the probation officer's "request" to search and there was no request here where the probationer had not been present or notified before the search commenced. The state countered that even though the condition appeared to be worded in terms of the probationer's obligation, its true intent was to confer authority on the probation officer-- the authority to search the probationer's residence at will, regardless of whether the search was prefaced by a request, and regardless even of whether the probationer was aware of the search.

---

[3] This is a distinct issue from whether a probationer may refuse the request to search (which would constitute a violation of the probation conditions and put him at risk for revocation of probation) or whether an officer may proceed with a warrantless search regardless of whether a probationer actually consents at the time of the impending search. As the state points out, most courts that have addressed this issue have concluded that a condition which requires a probationer to "submit" to a search permits warrantless searches by probation officers regardless of whether the probationer actually consents to the search. *See Owens v. Kelley*, 681 F.2d 1362, 1368 (11th Cir. 1982); *State v. James*, 963 P.2d 1080 (Alaska Ct. App. 1998); *People v. Kasinger*, 57 Cal. App. 3d 975, 978 (1976); *Himmage v. State*, 496 P.2d 763, 765-66 (Nev. 1972); *People v. Fortunato*, 50 A.D.2d 38, 42-43 (N.Y. App. Div. 1975); *State v. Benton*, 695 N.E.2d 757, 761-62 (Ohio 1998); *State v. Martinez*, 811 P.2d 205, 209 (Utah Ct. App. 1991); *Anderson v. Commonwealth*, 490 S.E.2d 274, 279 (Va. Ct. App. 1997). *But see People v. Lampitok*, 798 N.E.2d 91, 110 (Ill. 2003) (holding that under condition which requires a probationer to "submit" to a search, if the probationer refuses consent to search their probation can be revoked, but the officer cannot proceed with a warrantless search); *State v. Davis*, 891 P.2d 1373, 1378-79 (Or. Ct. App. 1995) (same). However, the issue of refusal is different from whether the officer must provide the probationer with contemporaneous notice of the search pursuant to express terms of the probation agreement.

In concluding that the condition imposed required that the probation officer first request the opportunity to search, the court first noted:

> One might reasonably argue that the purposes of probation would be better advanced if [the condition] were interpreted as the State suggests--to allow probation officers to conduct unrestricted, unannounced searches of a probationer's residence. However, other societal interests support [the probationer's] interpretation of [the condition]. As the supreme court recognized in *Roman v. State*, 570 P.2d 1235 (Alaska 1977), there is a price to be paid for adopting a rule that probationers and parolees give up all of their Fourth Amendment rights simply because they are on probation or parole:
>
>> Fourth amendment protection will be diminished not only for parolees, but also for the family and friends with whom the parolee might be living. Those bystanders may find themselves subject to warrantless searches only because they are good enough to shelter the parolee, and they may therefore be less willing to help him--a sadly ironic result in a system designed to encourage reintegration into society.
>
> *Roman*, 570 P.2d at 1243 (quoting Note, *Striking the Balance Between Privacy and Supervision: The Fourth Amendment and Parole and Probation Officer Searches of Parolees and Probationers*, 51 N.Y.U. L. REV 800, 816 (1976)).

*Id*.

After examining this policy consideration and how it played out in that case (where the probationer's daughter and her children were essentially placed under arrest while the officers searched the entire house), the court turned to the actual language of the condition, stating that:

> [W]e note that we do not have complete liberty to construe [the condition] as we think best. In Alaska, a defendant has the choice whether to accept the sentencing court's offered conditions of probation or to refuse and serve the suspended prison term instead. . . . Thus, to a certain extent, "the terms of probation might be likened to a contract between the court and the defendant". In construing [the condition], we must therefore examine how a reasonable person in [the probationer's] place would have understood it, taking into consideration "the language of the disputed provision . . . and the case law interpreting similar provisions".
>
> As noted before, *the language of [the condition] does not, on its face, grant a probation officer the kind of open-ended authorization to search that the State argues for*. Instead [the condition] is worded so as to impose an obligation upon [the probationer]--the obligation to submit to a search whenever requested by his probation officer. Thus, the language of the disputed provision appears to support [the probationer's] interpretation--that the probation officer's authority to search is premised on [the probationer] receiving notice of the intended search.

*Id.* (emphasis added) (citations omitted). The court noted that cases from other states interpreting similar provisions also tended to support the probationer's interpretation of the provision and that the state had failed to cite any case law to support its interpretation that the condition authorized the probation officer to search the probationer's residence essentially at will, with no prior notice to the probationer and without regard to whether the probationer was present. For these reasons, the court concluded that the condition required the probation officer to notify the probationer before searching his house and therefore, the search conducted in the case was not authorized by the conditions of the probationer's probation. *Id.* at 1194.

Similarly, in *State v. Hindman*, 866 P.2d 481 (Or. Ct. App. 1993), the defendant was subject to a condition of probation requiring him to "[s]ubmit to [s]earch of person, vehicle, property and residence upon request of probation or police officer." *Id.* at 482. The Oregon court held:

> The language of the probation condition . . . requires that defendant submit to searches *upon request*. We thus conclude that defendant's probation condition was an agreement to consent to a search and not a prospective consent. If defendant was to refuse to consent to a requested search, he would be violating a condition of his probation. . . . [T]he record does not show that defendant's consent was either asked for or given before the police conducted the search. . . . Accordingly, we hold that the search was unlawful . . . .

*Id.* at 483.

The California Supreme Court came to the same conclusion in *People v. Mason*, 488 P.2d 630, 632 (Cal. 1971), *overruled on other grounds by People v. Lent*, 541 P.2d 545, 548 n.1 (Cal. 1975), where the defendant was subjected to the condition that he submit to a search "whenever requested to do so," concluding that this language required that the officers notify the defendant prior to the search and that had the search been carried out without the defendant's knowledge, it would have been invalid. *Id.* The Court followed *Mason* in *People v. Stevens*, 528 P.2d 41 (Cal. 1974), holding that where the defendant's condition of probation required him to submit to a search of his residence "upon request" by his probation agent, the condition did not authorize a search of the defendant's residence in his absence and without his knowledge. *Id.* at 43. The Court noted, however, that *Mason* did not require the physical presence of the probationer or other person who is entitled to notice before the search can occur, so long as such notice is given. Moreover, the notice need not be formally given and might even be implied in circumstances which warrant a conclusion that a parolee or probationer had knowledge that a request was to be

made. *Id.* at 43 n.3. *See also Marts v. Superior Court*, 49 Cal. App. 3d 517, 520 (1975) (holding that where a parolee is required to submit to searches at the "request" of an officer, that condition is satisfied once the parolee is informed of the officer's intent to conduct an impending search).

Finding the reasoning of these authorities persuasive, we conclude that a probation condition that requires a probationer to submit to a search "at the request of" an officer requires that the probationer be informed of an officer's intent to conduct an impending search.[4] Like the *Joubert* Court, we recognize that the purposes of probation may be better advanced if we were to allow probation officers to conduct unrestricted, unannounced searches of a probationer's residence. However, we must keep in mind that probationers' expectation of privacy is merely diminished, not obliterated. In addition, to adopt the state's interpretation of the term would be to essentially ignore the plain language of the probation condition--a proposition for which the state has cited no authority and which does not constitute an "objectively reasonable," nor logical, interpretation.

## III.

## CONCLUSION

Because we conclude that the search could not be justified on the grounds that it was a reasonable and lawful "visit" and that the inclusion of the phrase "at the request of" in the probation search condition required that the probation officer notify Turek prior to the search, we affirm the district court's grant of Turek's motion to suppress the evidence found in his shed.

Chief Judge GRATTON and Judge LANSING **CONCUR**.

---

[4]    The Illinois Supreme Court has taken an even stricter stance on the interpretation of search conditions--holding that a condition which stated that the probationer "shall submit" to searches at any time, and which did *not* include the phrase "at the request of," still required officers to obtain consent from the probationer as the term did not constitute prospective consent which waived the probationer's fourth amendment rights. Specifically, the court concluded that the use of "shall" created a duty in the probationer to submit to searches which implied the requirement of further action on the probationer's part rather than prospective consent toward possible future, unspecified searches. *Lampitok*, 798 N.E.2d at 110.

The Oregon Court of Appeals came to the same conclusion where the condition required the defendant to "submit . . . to reasonable search and seizure by the Probation Officer without a warrant." *Davis*, 891 P.2d at 1375. The court concluded that this condition of probation "[d]oes not constitute a self-executing, prospective consent by the probationer to a general warrantless search. Rather, it represents an agreement by the probationer to submit to reasonable searches by the probation officer. . . ." *Id.*