# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44772

STATE OF IDAHO, )
) Boise, December 2017 Term
    Plaintiff-Appellant, )
) 2018 Opinion No. 10
v. )
) Filed: January 18, 2018
BRODY L. JASKOWSKI, )
) Karel A. Lehrman, Clerk
    Defendant-Respondent. )

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bear Lake County. Hon. Mitchell W. Brown, District Judge.

The district court's order suppressing evidence is affirmed.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant.

Respondent did not participate in the appeal.

_____

HORTON, Justice.

The State of Idaho appeals from the decision of the district court suppressing evidence found during a search of Brody Jaskowski's pickup. Relying on *State v. Turek*, 150 Idaho 745, 250 P.3d 796 (Ct. App. 2011)*,* the district court held that Jaskowski's probation agreement required that his probation officer request that Jaskowski submit to a search. The district court found that the probation officer did not make such a request of Jaskowski before searching his vehicle. Therefore, the district court suppressed evidence discovered in the course of the search. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 29, 2014, following his plea of guilty to a misdemeanor charge of driving under the influence, Jaskowski was placed on supervised probation for 18 months. The judgment of conviction and order for probation incorporated Jaskowski's agreement of supervision. In Paragraph 9 of the supervision agreement, Jaskowski agreed that:

> I shall submit and I agree to polygraph examinations, warrantless searches of my person, personal property, electronic devices, automobiles, residence, and

1

outbuildings at the request of my Probation Officer, by the Probation Officer, Peace Officer, and/or his designee; with or without Probable Cause; any time day or night. I understand that any Alcohol, evidence, and/or Contraband will be confiscated, and new charges can be filed in the event of criminal activity.

On April 15, 2016, Jaskowski was driving his pickup when he was stopped by a Montpelier Police Department officer. The officer had been looking for Jaskowski because he had recently learned that there was a warrant for Jaskowski's arrest. After seeing a pickup matching the description of one registered to Jaskowski, the officer contacted dispatch and was advised that there was a warrant for Jaskowski's arrest. Aware that Jaskowski was on probation, the officer also called Jaskowski's probation officer, who asked him to stop Jaskowski.

The officer pulled Jaskowski over and, as he approached the pickup, the officer was informed that the warrant for Jaskowski's arrest had been recalled by the court. The officer informed Jaskowski of the reason for the stop and requested his driver's license and vehicle information. The officer "ran" Jaskowski's driver's license and learned that it "was shown as denied." As the officer was writing Jaskowski a citation for driving without privileges, Jaskowski's probation officer arrived.

The probation officer told Jaskowski that he was going to search his vehicle and then began the search. At some point in the search, the probation officer asked the police officer to take Jaskowski into custody. After complying with the probation officer's request, the police officer then assisted in completing the search of Jaskowski's pickup.

During the search, the officers found two pipes that field-tested positive for the presence of methamphetamine. In subsequent questioning, Jaskowski admitted to having used the pipes to smoke methamphetamine a few days earlier.

Jaskowski was charged with a felony for possession of methamphetamine and two misdemeanors for possession of drug paraphernalia and driving without privileges. Jaskowski filed a motion to suppress. Following an evidentiary hearing, the district court found that the probation officer "did not request permission or consent to search the vehicle Jaskowski was driving" and "merely made the declaratory statement that 'I was going to search' the vehicle." Applying the rule it understood to have been pronounced in *Turek*, the district court suppressed all evidence "seized or related to" the search of Jaskowski's pickup. The State timely appealed.

## II. STANDARD OF REVIEW

In reviewing a district court order granting or denying a motion to suppress evidence, the standard of review is bifurcated. This Court will accept the trial

2

court's findings of fact unless they are clearly erroneous. However, this Court may freely review the trial court's application of constitutional principles in light of the facts found.

*State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009) (citations omitted).

### III. ANALYSIS

The State contends that the district court erred by not recognizing that *Turek* requires only that the probationer be informed of an officer's intent to search. The State further argues that "[r]equiring 'permission or consent' . . . would render the Fourth Amendment waiver a nullity." In support of this second argument, the State quotes our decision in *State v. Purdum*, 147 Idaho 206, 207 P.3d 182 (2009), for the proposition that "a probationer's consent to searches constitutes a waiver of Fourth Amendment rights." *Id*. at 208, 207 P.3d at 184 (citing *State v. Gawron,* 112 Idaho 841, 736 P.2d 1295 (1987)). As we will discuss, the State is correct as to the Court of Appeals' holding in *Turek*. However, as did the Court of Appeals in *Turek*, we reject the broad proposition advanced by the State and affirm the decision of the district court.

In *Turek*, the Court of Appeals interpreted the scope of a probation agreement that contained a provision similar to the "at the request of" language in Jaskowski's probation agreement.[1] There, two probation officers and a sheriff's deputy went to Turek's home to conduct "an initial home visit." *Turek*, 150 Idaho at 746, 250 P.3d at 797. The officers knocked on the door and received no response, although they could hear music playing inside the home and could see smoke coming from the chimney. *Id*. The sheriff's deputy went to the back of the house to look for Turek, opened an unlocked shed door, and discovered "an active marijuana growing operation." *Id*. The district court granted Turek's motion to suppress, *id*. at 747, 250 P.3d at 798, and the State appealed.

In the portion of its opinion germane to this appeal, the Court of Appeals noted that the State contended "that the district court erred in interpreting the probation condition as requiring the probation officers or law enforcement to request permission to search at the scene." *Id*. at 748, 250 P.3d at 799. The Court of Appeals reviewed earlier decisions of this Court and concluded:

> We are unconvinced that *Gawron* and *Purdum* stand for the proposition that the type of probation condition at issue here constitutes a *complete* waiver of

---

[1] Turek's probation agreement required him to "[s]ubmit to searches of his/her person, residence, and any property under his/her control, without a warrant pursuant to probation supervision, at the request of the Probation Officer or Law Enforcement." *Turek*, 150 Idaho at 746, 250 P.3d at 797.

all Fourth Amendment rights, regardless of the actual language in the condition. The state's assertion that the acceptance of this probation condition constitutes an unfettered waiver of all Fourth Amendment rights against any warrantless search ignores a key component of the consent exception to the Fourth Amendment's proscription of warrantless searches—the *scope* of the consent. It is well settled that when the basis for a search is consent, the state must conform its search to the limitations placed upon the right granted by the consent. The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness.

*Id*. at 749, 250 P.3d at 800 (emphasis in original, citations omitted).

Having correctly determined that the scope of consent was the critical inquiry, the Court of Appeals then properly focused on the language of the probationary condition to determine whether the search "exceeded the scope of Turek's Fourth Amendment waiver." *Id.* The Court of Appeals then considered decisions from courts of sister states, noting that "[s]everal courts that have addressed the issue have concluded that the inclusion of 'at the request of' in the search condition requires that any search conducted under the authority of the provision be *preceded* by a request to search directed at the probationer."[2] *Id*. (emphasis in original). The Court of Appeals then carefully examined three decisions, *Joubert v. State*, 926 P.3d 1191 (Alaska Ct. App. 1996), *State v. Hindman*, 866 P.2d 481 (Or. Ct. App. 1993), and *People v. Mason*, 488 P.2d 630 (Cal. 1971), and concluded:

> Finding the reasoning of these authorities persuasive, *we conclude that a probation condition that requires a probationer to submit to a search "at the request of" an officer requires that the probationer be informed of an officer's intent to conduct an impending search*. Like the *Joubert* Court, we recognize that the purposes of probation may be better advanced if we were to allow probation officers to conduct unrestricted, unannounced searches of a probationer's residence. However, we must keep in mind that probationers' expectation of privacy is merely diminished, not obliterated.

*Turek*, 150 Idaho at 752, 250 P.3d at 803 (emphasis added, footnote omitted).

Thus, the State is correct that the district court went beyond the holding in *Turek* insofar as the Court of Appeals indicated that a condition of probation requiring a probationer to submit to a search "at the request of" an officer merely required that the officer inform the probationer

---

[2] The *Turek* court explained that whether the probationer must be presented with a request "is a distinct issue from whether a probationer may refuse the request to search (which would constitute a violation of the probation conditions and put him at risk for revocation of probation) or whether an officer may proceed with a warrantless search regardless of whether a probationer actually consents at the time of the impending search." *Turek*, 150 Idaho at 749 n.3, 250 P.3d at 801 n.3. As this is not the situation presented in this appeal, we likewise decline to address this distinct issue.

4

of the intent to conduct the search. Nevertheless, because Turek was not present at the time of the search, the Court of Appeals was not required to address the narrower question presented by this appeal, i.e., when the defendant is present at the time of a search, whether the simple announcement of the probation officer's intention to search is consistent with the scope of the probationer's consent to search. We hold that it is not.

The State's argument in this appeal is essentially that which the Court of Appeals rejected in *Turek*: that all Fourth Amendment waivers should be treated in the same way, without regard for the language used in the condition of probation. Our previous decisions regarding Fourth Amendment waivers do not support the State's assertion that we should adopt such a universal approach to Fourth Amendment waivers. *See Purdum*, 147 Idaho at 208, 207 P.3d at 184; *Gawron*, 112 Idaho at 843, 736 P.2d at 1297.

Close examination of these previous decisions reveals that the resolution of each case has depended upon the specific language of the waiver at issue. For example, in *Gawron* this Court recognized that the probationer had "expressly waived his constitutional right to be free from warrantless searches." *Gawron*, 112 Idaho at 834, 736 P.2d at 1297. The relevant term of the probation agreement provided: "That probationer does hereby agree and consent to the search of his person, automobile, real property, and any other property at any time and at any place by any law enforcement officer, peace officer, or probation officer, and does waive his constitutional right to be free from such searches." *Id.* at 842, 736 P.2d at 1296. Our decision reflected that the scope of the waiver is defined by the terms employed in the condition of probation. Gawron simply waived all Fourth Amendment rights relating to searches of his person or property.

We subsequently adopted the same approach in *Purdum*. There, the issue on appeal involved a seizure of the probationer. *Purdum*, 147 Idaho at 207, 207 P.3d at 183. The terms of Purdum's probation required him to "submit to random blood, breath and/or urine analysis upon the request of the Court, his probation officer or any law enforcement official" and that he "submit to searches of personal property, automobiles and residence without a search warrant at the request of his probation officer." *Id.* "[A] police officer who knew of Purdum's probation conditions observed Purdum driving a vehicle . . . and decided to stop him for a drug test." *Id.* Purdum pulled into his father's driveway and the officer made contact with him. *Id.* As the officer patted him down for weapons, Purdum "bolted." *Id.* The officer apprehended him and

arrested him for obstructing. A subsequent search of Purdum's vehicle incident to the arrest led to the discovery of drugs and paraphernalia.[3] *Id.*

Purdum argued that the seizure violated his Fourth Amendment rights because the officer lacked reasonable suspicion or probable cause to initially detain him. *Id.* at 207–208, 207 P.3d at 183–84. Focusing on the terms of his probation, we held that because Purdum had agreed to submit to random evidentiary tests, he had impliedly consented to "a limited seizure of his person necessary to effectuate" these tests. *Id.* at 208, 207 P.3d at 184.

The common guiding principle underlying our decisions in *Turek*, *Gawron*, and *Purdum* is that courts evaluating the scope of the Fourth Amendment waiver must look to the language used in the condition of probation in order to determine whether the search was objectively reasonable. It was no accident that our decision in *Gawron* recognized the analogy between probation agreements and traditional contractual terms in governmental contracts. *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987). We take an objective approach to interpretation of contracts. Under this approach, "the court will give force and effect to the words of the contract. . . . [T]he law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest." *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 614, 167 P.3d 748, 751 (2006) (quoting 17 Am.Jur.2d, Contracts, § 347 (2004)). Thus, we turn to the language of Jaskowski's probation agreement:

> I shall submit and I agree to polygraph examinations, warrantless searches of my person, personal property, electronic devices, automobiles, residence, and outbuildings *at the request of* my Probation Officer, by the Probation Officer, Peace Officer, and/or his designee; with or without Probable Cause; any time day or night. I understand that any Alcohol, evidence, and/or Contraband will be confiscated, and new charges can be filed in the event of criminal activity.

(emphasis added). The district court properly focused its attention on the "at the request of" language in granting Jaskowski's motion to suppress. Unlike the narrower holding in *Turek*, we agree with the district court that Jaskowski's waiver of his Fourth Amendment rights was conditioned upon the probation officer requesting to conduct a search and that any search conducted without such a prefatory request is not objectively reasonable. Based upon its factual determination that Jaskowski was not asked to submit to a search, the district court properly concluded that the search of Jaskowski's pickup exceeded the scope of his Fourth Amendment waiver. We therefore affirm the district court's suppression order.

---

[3] The validity of the search of the vehicle incident to arrest was not at issue in *Purdum*.

## IV. CONCLUSION

We affirm the district court's order suppressing evidence resulting from the search of Jaskowski's pickup.

Chief Justice BURDICK, and Justices JONES, BRODY and BEVAN **CONCUR.**