# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49210

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, December 2022 Term |
| | ) | |
| v. | ) | Opinion filed: March 24, 2023 |
| | ) | |
| CAMILLE J. POOL, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Benjamin J. Cluff, District Judge.

The decision of the district court is <u>reversed</u>, and the case is <u>remanded</u>.

Raúl R. Labrador, Idaho Attorney General, Boise, for Appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Respondent. Sally J. Cooley argued.

---

ZAHN, Justice.

This case concerns whether the search of a probationer's residence violated the Idaho Constitution because she only waived her Fourth Amendment rights against unlawful searches and seizures, but not her rights under Article I, section 17 of the Idaho Constitution. For the reasons discussed below, we conclude the search was lawful and reverse the district court's decision granting the motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent Camille Pool pleaded guilty to misdemeanor DUI in 2020. On May 26, 2020, approximately two months following the onset of the coronavirus pandemic, Pool was sentenced at a hearing conducted over Zoom which she attended remotely. The State recommended Pool be sentenced to supervised probation with suspended jail time. Pool requested a withheld judgment with unsupervised probation. The magistrate court sentenced Pool to 180 days in jail with 177 days

suspended, granted her a withheld judgment, and placed her on supervised probation for 18 months. After imposing sentence, the magistrate court discussed the terms and conditions of probation with Pool:

> THE COURT: Have you been able to read and understand the standard terms of probation agreement? Have you gotten a copy of that, ma'am?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. Ma'am, what I need you to do is this. I need you to come down and get -- and read that and sign that probation agreement. I'm also going to need you immediately to come on down and check in with probation and get signed up on there and get that taken care of. They will have that form there, and you can sign that and agree to that. If you do, you just need to read it, sign it, date it and initial it and fill that out. If, for some reason you don't, you need to let me know, and we'll come back and refigure out the sentencing if you don't want to agree to those terms. I'm going to highlight some of them now. I'm not going to go over all of them.

The magistrate court went on to explain some of the terms Pool would need to accept in order to receive probation, at which point the following colloquy occurred:

> THE COURT: And you are required to waive your 4th Amendment right against search and seizure. Do you have any questions about those terms?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. Get down there and get signed up on that. Once you get signed up on that, I will go ahead and sign the judgment. We'll get that entered in this case.

The following day, the magistrate court entered a written Judgment of Conviction. The Judgment was a form document for DUI cases, with preprinted terms and boxes to check for the judge to indicate which terms were imposed in a particular case. The form included blank lines for the judge to fill in the sentence imposed, including any court fines or fees. The court checked the box indicating that probation was ordered. A paragraph next to the probation check box listed possible probation terms, which included:

> Defendant specifically waives his/her 4th Amendment right to warrantless search of his/her person, vehicle, or residence by any law enforcement or probation officer.

The form included a line for the defendant's signature, but Pool was not personally present in the courtroom and, therefore, did not sign the Judgment. Instead, on the signature line, someone handwrote "mailed to defendant 5/27/2020."

Also on May 27, Pool signed a "Standard Conditions of Probation Agreement." The Probation Agreement contains a signature on the probation officer signature line, but the signature

is not legible, and the record does not reveal who Pool met with when she signed the Probation Agreement or where it was signed. The Probation Agreement did not reference a waiver of Pool's rights against search and seizure. However, the Probation Agreement stated, "I agree to comply with all requirements specified by my probation officer, this agreement, and the Judgment of Conviction." Pool's probation officer, Mirnes Alic, testified that he went over all the terms in Pool's Judgment of Conviction with Pool, including the Fourth Amendment waiver, at their initial meeting within 30 days of her being enrolled in probation.

While on probation, Pool failed to appear for drug and alcohol testing and failed to comply with other terms of her probation. On April 14, 2021, Alic and two other probation officers went to Pool's residence to conduct a residence check. Alic spoke with Pool, mentioned the Fourth Amendment waiver, and Pool indicated that she understood. Alic then searched Pool's residence and found drugs and drug paraphernalia.

Following the search of her residence, Pool was charged with felony possession of a controlled substance and a misdemeanor charge for possession of drug paraphernalia. Pool moved to suppress the items seized and the statements she made during the search of her home, arguing that, among other things, she had not waived her right against search and seizure under Article I, section 17 of Idaho's Constitution and, therefore, the search violated her rights under the Idaho Constitution. The State did not file a written memorandum in opposition to Pool's motion.

At the hearing on the motion, the parties' arguments focused on whether Pool's waiver of her Fourth Amendment rights was knowing, voluntary, and intelligent and on the magistrate court's failure to mention a waiver of Pool's rights under Article I, section 17 of the Idaho Constitution. Relevant to this appeal, which only concerns the latter point, Pool's counsel argued that the Idaho Constitution is an independent source of rights that Pool did not waive. In response to Pool's Idaho Constitutional argument, the State asserted that this Court has treated the rights under both the United States and Idaho Constitutions as "the same" and that the magistrate court's plea colloquy indicated an intent for Pool to waive her rights against warrantless searches and seizures and that Pool agreed to do so. The district court granted Pool's motion and concluded that while Pool had waived her Fourth Amendment right against warrantless searches, she had not waived her Article I, section 17 rights against them. The State timely appealed.

## II. ISSUE ON APPEAL

1. Did the district court err by granting Pool's motion to suppress?

### III. STANDARD OF REVIEW

This Court reviews a district court's order granting a motion to suppress using a bifurcated standard of review. *State v. Pool*, 166 Idaho 238, 241, 457 P.3d 890, 893 (2020). The Court "accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *Id.* (quoting *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004)).

### IV. ANALYSIS

The State argues that Pool's waiver of her Fourth Amendment rights constituted a consent to warrantless searches of her home. The State contends that Pool's consent covers *all* warrantless searches of her home that would fall within the Fourth Amendment's protections. Because Pool consented to all searches falling within the protections of the Fourth Amendment, and because she does not contend that Article I, section 17 provides her with any greater protections against the search that occurred in this case, the State contends that Pool's waiver of her Fourth Amendment rights constituted consent to the search in this case.

Pool argues that the State's position is untenable in light of Idaho caselaw. Pool reads the State's argument as advocating for a shift in how waivers are analyzed in Idaho. Pool argues that Idaho caselaw is clear that the scope of consent provided by a term of probation is determined by the language itself. Pool then asserts that the Fourth Amendment and Article I, section 17 confer separate rights and, therefore, a waiver that only mentions one of these rights cannot be construed as waiving them both.

The district court concluded that "the magistrate's oral imperatives to [Pool] were sufficient for [Pool] to know and understand that she was waiving her 4th Amendment rights as a condition of her probation." In its analysis of Pool's Idaho constitutional rights, the district court noted that any waiver could not be presumed. The district court concluded that neither the unsigned Judgment of Conviction nor Pool's Probation Agreement established a valid waiver. The district court concluded, however, that Pool's plea colloquy with the magistrate court did constitute a valid waiver of her Fourth Amendment rights. Given that the colloquy only discussed Pool's Fourth Amendment right against search and seizure, the district court concluded that Pool's rights under the Idaho Constitution remained intact.

The district court rejected the State's argument that Pool's Idaho constitutional rights were coextensive with the Fourth Amendment rights, instead finding that the two constitutions conferred

4

separate, distinct rights. The district court concluded that the State failed to demonstrate that Pool had waived her rights against unlawful searches and seizure under Article I, section 17 of the Idaho Constitution. As a result, the search violated Pool's rights under Article I, section 17 and the district court granted Pool's motion to suppress.

The Fourth Amendment to the United States Constitution guarantees that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 17 of the Idaho Constitution provides a similar guarantee:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

Although the Fourth Amendment and Article I, section 17 confer similar rights, the protections afforded by these two constitutional provisions are not always coextensive. *See, e.g.*, *State v. Koivu*, 152 Idaho 511, 519, 272 P.3d 483, 491 (2012) (reaffirming Idaho's separate exclusionary rule and refusing to adopt the good-faith exception that arises under the Fourth Amendment); *State v. Webb*, 130 Idaho 462, 467, 943 P.2d 52, 57 (1997) (holding that Article I, section 17 provides broader protection for curtilage than that provided under the Fourth Amendment).

"Warrantless searches are presumptively unreasonable." *State v. Hansen*, 167 Idaho 831, 835, 477 P.3d 885, 889 (2020) (citation omitted). "When a search is conducted without a warrant, the State carries the burden of demonstrating that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances." *Id.* (citation omitted).

Consent is a recognized exception to the warrant requirement. *Id.* "Consent given by a probationer as a term in his probation agreement is encompassed within the consent exception." *Id.* (first citing *State v. Maxim*, 165 Idaho 901, 905, 454 P.3d 543, 547 (2019); then citing *State v. Jaskowski*, 163 Idaho 257, 259–60, 409 P.3d 837, 839–40 (2018)). The scope of the probationer's consent must derive from the language of the probation term. *Jaskowski*, 163 Idaho at 260–61, 409 P.3d at 840–41 ("[T]he resolution of each case . . . depend[s] upon the specific language of the waiver at issue."). This Court has likened this analysis to the interpretation of a contract. *Hansen*, 167 Idaho at 836, 477 P.3d at 890. Thus, this Court takes an objective approach whereby the plain

language of the term of probation governs because "the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest." *Jaskowski*, 163 Idaho at 261, 409 P.3d at 841 (alteration omitted) (quoting *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 614, 167 P.3d 748, 751 (2006)).

The Idaho Court of Appeals applied this objective approach in *State v. Turek*, 150 Idaho 745, 749, 250 P.3d 796, 800 (Ct. App. 2011). In *Turek*, a probationer's term of probation stated that he agreed to submit to searches "at the request of" law enforcement. 150 Idaho at 746, 250 P.3d at 797. Officers then went to Turek's home to conduct an "initial probation home visit," but nobody answered the door. *Id.* The officers entered the property and opened a shed looking for Turek. *Id.* Instead, they found a marijuana growing operation. *Id.* Turek was not present at any point during the search, nor was he notified that officers would be conducting the home visit. *Id.* at 747, 250 P.3d at 798. He was charged in connection with the grow operation and moved to suppress the evidence, arguing the search was unconstitutional. *Id.* The Idaho Court of Appeals concluded that the probation agreement's language "at the request of" required that, prior to conducting a search, Turek be informed of the officer's intent to conduct the search. *Id.* at 752, 250 P.3d at 803. Since officers conducted the search without Turek's knowledge, their search was beyond the scope of consent provided in the term of probation. *Id.*

Pool contends on appeal that the scope of her consent was limited because she only waived her Fourth Amendment rights against warrantless searches, not her Article I, section 17 rights. Thus, Pool frames the issue not as whether she consented to the warrantless search in this case, but instead as whether she validly waived her rights under Article I, section 17.

In contrast, the State asserts the issue as one of consent. The fact that Pool's consent stems from a Fourth Amendment waiver does not limit the scope of her consent, but instead serves as a reference point for determining exactly what Pool consented to. The State frames the issue as whether she consented to the conduct that occurred here. If she did, that consent was valid for all warrantless searches except those for which the Idaho Constitution provided greater protection than the Fourth Amendment.

We agree with the State's framing of the issue. In this case, the scope of Pool's consent is measured by identifying the constitutional rights she waived. In other words, if Pool waived her Fourth Amendment rights against unlawful searches and seizures, then she consented to those searches and seizures that would otherwise be unlawful under the Fourth Amendment. Notably,

Pool has not cross-appealed the district court's conclusion that she validly waived her Fourth Amendment rights during her plea colloquy with the magistrate judge. The district court's decision on this point is now final and we are bound to apply it when determining whether Pool consented to the search in this case. We thus conclude that Pool's Fourth Amendment waiver constituted a consent to the warrantless search of her home in this case, which would otherwise be illegal under the Fourth Amendment.

On appeal, Pool argues that the district court correctly determined that although she waived her Fourth Amendment rights, she did not waive her rights under Article I, section 17 of the Idaho Constitution and the search therefore violated her rights under the Idaho Constitution. Pool, however, has not argued that Article I, section 17 provides her with any greater protections against the warrantless search of her residence than the Fourth Amendment. In fact, at oral argument, Pool's counsel conceded that, in this instance, the protections of the Fourth Amendment and Article I, section 17 are coextensive.

We agree with Pool that in this instance Article I, section 17 provides no additional protections against the search at issue in this case. The crux of Pool's argument below and on appeal was that the search of Pool's residence was illegal because it was conducted without first obtaining a warrant. The requirement that the government obtain a warrant prior to conducting a search is a procedural protection provided by both the Fourth Amendment and Article I, section 17 of Idaho's Constitution.

In its decision granting Pool's motion to suppress, the district court recognized that there are *some instances* where Article I, section 17 provides greater protection against government intrusion. *See, e.g.*, *Koivu*, 152 Idaho at 519, 272 P.3d at 491; *Webb*, 130 Idaho at 467, 943 P.2d at 57. The district court did not, however, conclude that Article I, section 17 provided Pool with greater protections against the warrantless search of her residence in this case. Rather, the district court appears to have concluded that, because Article I, section 17 provides greater protections in some instances, a probationer must always separately waive his or her Article I, section 17 rights in order to provide consent to warrantless searches.

The district court erred in making this assumption. Our focus when examining the scope of consent is to identify the conduct to which a party consented. After conducting this inquiry, we then assess whether the search was objectively reasonable in light of the conduct she consented to. In this case, Pool consented to warrantless searches of her residence that would be unlawful under

7

the Fourth Amendment. Because Pool concedes that, in this instance, the Idaho Constitution provided the same protections against the search of her home as did the Fourth Amendment, the failure to obtain a separate waiver of Pool's rights under Article I, section 17 did not nullify her valid consent to the warrantless search of her residence.

We hold that, where the protections against unlawful searches provided by the Fourth Amendment and Article I, section 17 are coextensive, a probationer's valid waiver of her rights under one constitutional provision constitutes consent to conduct covered by both constitutions. Therefore, we reverse the district court's order granting Pool's motion to suppress and remand this matter for further proceedings.

This decision should not, however, be read to endorse the form of the waiver in the Judgment of Conviction in this case or the colloquy that took place between the magistrate court and Pool at the time of sentencing. Our analysis today rests on the district court's unchallenged legal conclusion that Pool knowingly, voluntarily, and intelligently waived her Fourth Amendment rights at her sentencing hearing. Our decision today does not hold that the colloquy between Pool and the magistrate court at her sentencing constituted a valid waiver of her Fourth Amendment rights. We are bound by the district court's conclusion on this issue because Pool has not cross-appealed it. Future cases will be decided on their own unique facts.

To avoid the risk of invalid waivers and illegal searches in future cases, the sentencing court and counsel should ensure a complete plea colloquy occurs that includes all required elements of a knowing, voluntary, and intelligent waiver of any constitutional rights required to be waived as a term and condition of probation. Further, the terms and conditions of probation should be included in or appended to the judgment of conviction. Finally, best practice would indicate the defendant should sign the judgment of conviction. While we recognize this sentencing was conducted virtually due to the pandemic, the magistrate court should have required Pool to come to the courthouse to sign the Judgment before it would be effective. Additionally, although we cannot find error in this case in the failure to recite the comparable search and seizure rights contained in the Idaho Constitution, we note that the better practice is to obtain a waiver of rights which covers both constitutions.

## V. CONCLUSION

Pool's waiver of her Fourth Amendment rights constituted a consent to warrantless searches of her residence. Counsel for Pool conceded that Article I, section 17 does not provide

Pool with any greater protections than the Fourth Amendment against the warrantless search that occurred in this case. Thus, the fact that Pool did not expressly waive her rights under Article I, section 17 did not nullify or limit the scope of her consent to the warrantless search in this case. Accordingly, we reverse the district court's order granting Pool's motion to suppress and remand for further proceedings.

Chief Justice BEVAN, Justices BRODY, STEGNER, and MOELLER CONCUR.